May Term,
1854.

THE CITY OF
LAFAYETTE
v.
Cox.

5　38
138　342

| 5 | 38 |
| 144 | 121 |
| 145 | 438 |

| 5 | 38 |
| 154 | 495 |

| 5 | 38 |
| 160 | 458 |

| 5 | 38 |
| 162 | 56 |

THE CITY OF LAFAYETTE *v.* COX.

The powers of a city are limited to those which a strict construction of the grant of powers in its charter will allow it.

The charter of the city of *Lafayette* does not authorize the corporate authorities to issue bonds to aid in the construction of a railroad.

The charter of the city of *Lafayette* contains a general provision that the city may, upon compliance with certain formalities, create a debt. It, however, restrains the authorities, in general, to a certain rate of taxation; but, at the same time, authorizes the corporation to construct wharves, docks, piers, water works, works for lighting the city, &c., undertakings the expense of which might far exceed the annual revenues of the city at the general rate of taxation. *Held,* that the general provision authorizing the city to create a debt, empowers it only to create a debt for these undertakings.

Tuesday,
May 23.

APPEAL from the *Tippecanoe* Court of Common Pleas.

PERKINS, J.—Bill in chancery, in the *Tippecanoe* Circuit Court, by *Thomas S. Cox*, a citizen and property holder of the city of *Lafayette*, against said city, praying an injunction restraining the corporate authorities from issuing bonds to the *Lafayette and Northern Illinois Railroad Company*, in accordance with the petition of three-fourths of the voters, and the resolution of the city council of said city, to aid said company in raising funds for the construction of their projected road. An injunction was granted below. Appeal to this Court.

Two questions have been ably and elaborately argued by counsel, and presented for our decision.

1. Has the legislature attempted to grant to the city of *Lafayette* the power to issue such bonds?

2. Can the legislature grant such a power?

Municipal corporations are said to exist, in *England*, by prescription, by grant from the king, and by act of parliament. Cities are such corporations, and are created and endowed with more or less of the legislative and administrative powers of the state, for the purpose of having their aid in governing the state, or parts thereof; and the powers conferred upon them differ according to the exigencies of cases, and may be somewhat influenced, probably, by the

political theory of the government creating them. Histo- May Term, 1854.

tain amount of power, and nothing more nor nothing less, constitutes a city. It may vary from that possessed by the *Italian* republics and the free cities of *Germany*, in the middle ages, down to that of a rotten borough in *England*. In celtic *France*, where the consolidation and centralization theory of government prevails, and where, it is said, that whether the form of government be nominally monarchical or republican, no one can alter the direction of a road, build a bridge, or open a mine without the authority of the state minister *des ponts et chaussees,* the power conferred on municipal corporations might be very limited, while among the self-reliant Anglo-Saxons of *England*, and more especially of the *United States*, under republican governments, where the political tendencies are centrifugal, tending to diffuse power among the members rather than concentrate it in the head of the body politic, we may expect greater powers of local government entrusted to the municipal corporations scattered over the state.

The City of Lafayette v. Cox.

With us, cities are created and endowed with powers by the legislature, under what are called charters; and it is an established rule of law, one so well known that it would be superfluous to cite authorities as evidence of it, that, in their action, these cities must be confined within the limits that a strict construction of the grants of powers in their charters will assign to them. If the city of *Lafayette*, therefore, possesses the power she proposes to exercise, it must appear clearly and expressly granted in the enactment under which she acts as a corporation. Especially should so great and substantive a power as that assumed, one involving taxation to an indefinite extent—a power so liable to abuse and so often abused—be plainly conferred. We do not mean to say that this power is more likely to be abused, or made to operate more hardly upon the minority, when exercised by a city than by a state. In either case, the burdens and benefits are unequally distributed, and such is the imperfection of all things human, that it must be so. This very fact furnishes a motive for

a cautious exercise of such power—the power of taxation for such kinds of public improvements, by both cities and states.

We have carefully looked through the charter of the city of *Lafayette*, and discover no power that will justify her issue of the bonds in question. We find a power granted to create, upon certain. formalities, a debt, and upon this authority it is insisted the city had a right' to issue her bonds, as she had voted to do, to the railroad company in question. The argument comes to this. The city is authorized to create a debt; therefore, she may create a debt for whatever purpose she pleases, be it even arming, transporting to, and maintaining in *Turkey*, a regiment of soldiers to fight the *Russian* autocrat.

The argument is not sound. This provision in the charter must be construed in connection with its other provisions, and as designed to aid in carrying them into effect. The charter restrains the city authorities, in the general, to a certain rate of taxation; at the same time it authorizes the corporation to construct wharves, docks, piers, basins, water works, works for lighting the city, &c., undertakings which would involve an expense far beyond the amount of the annual revenues of the city, at the general rate of taxation; and it is in reference to these undertakings that we must. construe the power mentioned for the creation of a debt. If the city contracts a debt beyond the annual revenues, at the general rate of taxation, the amount of which the council are allowed to anticipate, it must be for some of these specified purposes, and not for such undertakings as she has not been empowered to enter into. Of the correctness of this interpretation we think there can be no doubt.

The decree below must be affirmed, therefore, on the ground that the legislature has not conferred (if it can) upon the city of *Lafayette* the power to issue the bonds in question.

The consequence is that it becomes unnecessary for us to examine the second question argued, viz., whether the legislature can confer such power; and we have not inti-

mated, and shall not intimate, any opinion upon that point.

STUART, J., concurred in the conclusion, but dissented from the reasoning of the Court.

*Per Curiam.*—The decree is affirmed with costs.

*T. Dame*, *R. C. Gregory*, and *R. Jones*, for the appellant.

*S. A. Huff*, *Z. Baird*, *G. S. Orth*, and *E. H. Brackett*, for the appellee.