RUDISILL, AUDITOR, *v.* THE STATE, EX REL. BIRD ET AL.

HIGHWAY.—*Damages.*—*Payment.*—When the amount of damages which will result from the opening of a highway is ordered to be paid out of the county treasury, the county commissioners may treat the case as one where the amount is deposited in the county treasury for the use of the parties entitled to the same, and may proceed to order the road to be opened and kept in repair.

SAME.—*Parties.*—No one except the parties entitled to receive the amount of the damages can maintain any form of action requiring the payment thereof.

APPEAL from the Allen Circuit Court.

DOWNEY, J.—This was a proceeding by mandate instituted by the appellees against the appellant upon a sworn complaint, stating that on the 27th day of January, 1871, being the fifty-ninth judicial day of the November term of the Allen Circuit Court for the year 1870, in a certain cause then pending in the said Allen Circuit Court, on appeal from an order of the board of commissioners of the county of Allen, ordering a certain highway to be located and opened from a point where the old Piqua road intersects the north line of the south-west quarter of section seven, in township thirty, north of range thirteen east, thence eastward through sections seven, eight, nine, and ten to the intersection of said half section line, upon certain conditions in said order contained, it was ordered by the court that the damages theretofore assessed by a jury in that behalf, to wit, two hundred dollars to Carrie E. Barney, two hundred and twenty-five dollars to Alanson H. Barney, fifty dollars to Ernst Vodermark, and fifty dollars to Henry Benter, should be paid out of the treasury of Allen county, and that upon payment thereof said road should be located, opened, and kept in repair, beginning at the intersection of the old Piqua road with the north line of the south-west quarter of section seven, in township thirty north, of range thirteen east, thence east on the said half section line to the cross road located between the farms of Jasper Sudwick and Edward Phelps on the section line dividing sections eight and nine, said road to be opened of the width of forty feet, that is to

say, twenty feet on each side of said half section line. And, therefore, separate final judgments were rendered in said court against the board of commissioners of Allen county in favor of the said Carrie E. Barney for the sum of two hundred dollars, in favor of the said Alanson H. Barney for two hundred and twenty-five dollars, and in favor of the said Ernst Vodermark for the sum of fifty dollars, as in and by the records of said cause, a copy of which is filed herewith, more fully appears. It is also alleged that all of said relators are freeholders and residents of Allen county, and that they were all petitioners for said highway, which runs through the lands of all of them, except said Bird. And it is further stated that they and many other citizens of said county are interested in the immediate opening of said road, but that the same cannot be opened until said damages are paid; that they have requested the auditor of said county to issue orders upon the treasurer for the payment of said several sums so assessed and ordered to be paid as aforesaid, but that Henry Rudisill, auditor of said county, refuses to issue orders therefor, upon the alleged ground that he has been forbidden to do so by the board of commissioners of Allen county. The complaint concluded with a prayer that inasmuch as said relators have no other remedy in the premises, and cannot have said highway opened until said damages are paid, a writ of alternative mandate may be issued against said Henry Rudisill, auditor as aforesaid, to appear in the court and show cause why a peremptory mandate should not issue against him, to compel him to issue county orders for the payment of the said several assessments, with interest thereon from the date of said order of the circuit court, and for other proper relief.

The defendant demurred to the complaint in this form: "The defendant demurs to said affidavit, complaint, and cause of action, and says that the same does not disclose the names of any parties plaintiffs authorized, by law, to prosecute the same, on whose relation the said proceeding is proposed to be prosecuted; that the State is not a proper or

necessary party; that the same does not contain, nor is there appended thereto, any transcript of the proceedings in which the judgments, which are made the bases of this proceeding, were rendered; that this proceeding being only for the payment of money, based on judgments against the county, will not lie, the parties interested having another remedy if they have any; that the same does not state facts sufficient to constitute a cause of action."

There is but one statutory cause of demurrer set out here, and that is, that the complaint does not state facts sufficient to constitute a cause of action. This demurrer was overruled, and the defendant excepted. The defendant declining to make any further defence, the court rendered judgment against him, commanding him to issue his warrant upon the county treasurer, as provided by law, for the amounts with interest, as in said plaintiffs' petition set out, to wit, to Carrie H. Barney, the sum of two hundred dollars; to Alanson Barney, the sum of two hundred and twenty-five dollars; to Ernst Vodermark the sum of fifty dollars, and to Henry Benter the sum of fifty dollars. There was also a judgment for costs against the defendant.

The alleged improper ruling of the court, in overruling the demurrer to the complaint, is the only error which is properly assigned.

It does not clearly appear in the complaint whether the parties in whose favor damages were assessed are willing to receive the amounts or not. Perhaps it might be inferred that they do not desire to receive the same, or they would have demanded the issuing of the orders by the auditor upon the treasurer, and upon his refusal would have been the relators in the action.

It is provided, that "if a majority of the viewers assess and report damages in favor of the objector, and the board shall consider the proposed highway, vacation or change, to be of sufficient importance to the public, they shall order the costs and damages to be paid out of the county treasury; but if a majority report against the claim for damages, the

objector shall pay the costs; and when payment of damages is made as herein provided, such highway shall be recorded and ordered to be opened and kept in repair, as hereinbefore provided, after notice to the proper trustees." 1 G. & H. 364, sec. 21.

It is further provided, in section 25, on the same page, that no such highway shall be opened, worked, or used, until the damages therefor shall be paid to the persons entitled thereto, or deposited in the county treasury for their use, or they shall give their consent thereto in writing, filed with the auditor of said county.

These provisions for payment of the damages before the highway can be opened, worked, or used, have reference, no doubt, to section 21 of article 1 of the constitution of the State, which provides that no man's property shall be taken by law without just compensation; nor, except in case of the State, without such compensation first assessed and tendered.

As the money out of which the damages assessed were to be paid was already, in presumption of law, in the public treasury, the question arises, whether it was necessary to draw it from the treasury and again deposit it there for the use of the parties entitled to it, or whether it is not sufficient that the amount be assessed, and the parties entitled to it left to draw it from the treasury when they see proper to do so. It seems to us that the relators cannot maintain an action to compel the auditor to issue the orders to them. They have no claim against the treasury. The damages were not assessed in their favor. If orders should be issued by the auditor, as directed by the judgment of the court, the relators would not be entitled to receive the orders, or to draw the money from the treasury by virtue of them. This could only be done by the persons entitled to the money. If the parties entitled to the money refuse to accept the orders and to draw the money, what then is to be done? The law does not authorize any one else to do so for them.

In *Dronberger* v. *Reed*, 11 Ind. 420, this court had under consideration the construction to be given to section 21 of article 1 of the constitution, which we have already copied into this opinion. That was a case involving the right of a supervisor of highways to enter upon adjoining lands and take materials for the repairs of the highway, without the previous payment of compensation therefor. This court said, in deciding that case: "Can the taking in this case be regarded as having been by the State? Strictly speaking, all private property taken for public use is taken by the State. No other power can take it. It must be taken by the sovereign power, in the exercise of the right of eminent domain. The public necessity and convenience have always indicated highways as one of the objects for which the State might take private property. But the State does not always—scarcely ever, indeed—take property directly herself. She acts through agents. It is, nevertheless, the State that takes by her agents. But after the policy was adopted of permitting corporations, such as canal, railroad, and turnpike companies, to construct certain highways, or *quasi* highways, at their own expense and for their own profit, instead of the State, and to take private property for that purpose, it sometimes happened that certain of those companies became unable to pay for the property so taken; and to obviate this difficulty, to remedy this evil, the clause in the new constitution was framed in the language we have quoted. It was not very happily chosen. It is certainly not very perspicuous, and does not evince a very clear idea of the subject to have existed in the mind of the author of the section. But we know, historically, that it was aimed at the companies and the evil we have stated. This fact should have influence in its construction. And while we are not willing now to enumerate precisely the cases in which prepayment must be made, we may say that we do not think that the taking of property for the construction and repair of highways, which are to be public and free—the property of no particular person or corporation, and the source of no private pecuniary

profit—presents such a case. See 1 Bl. Com. 139; 2 Kent Com. 339; *The City of Lafayette* v. *Cox*, 5 Ind. 38; *The City of Aurora* v. *West*, 9 Ind. 74." The provision of the constitution seems not to require that the money shall be actually paid by the State before taking the property, in those cases where the taking is by the State, in the proper sense of those words, or even that it shall be first assessed and tendered. It appears also that the taking of property for the making of a highway, in pursuance of a law of the State, is a taking by the State. We are therefore of the opinion that it was not necessary in this case to draw the money from the treasury and tender it to the persons entitled to it, or to deposit it again in the treasury for them. We think it may be regarded as already in the treasury for them, and subject to their claim to receive it whenever they see fit to claim it. The auditor is authorized to draw his warrant upon the treasurer for a sum allowed or certified to be due by any court of record, authorized to use a seal, and having jurisdiction beyond that of a justice of the peace, or by the board of county commissioners. 1 G. & H. 64, sec. 3.

We are of the opinion that, when the amount of damages is ordered to be paid out of the county treasury, as in this case, the commissioners may treat the case as one where the amount is deposited in the treasury for the use of the parties entitled to the same, and proceed to order the road to be opened and kept in repair. In a certain event contemplated by section 24 of the highway act, that is, when the damages are to be paid by the petitioners, and not by the county, the parties would, we presume, have to pay such damages, or deposit the amount in the county treasury for the use of the parties entitled to receive the same.

We conclude, then, that the relators had no right to maintain the action against the auditor, for two reasons; first, because an actual payment of the money out of the treasury before the opening of the road was unnecessary; and, second, because, if it was necessary, the relators were not authorized by law or by the judgment of the court to draw the

money from the treasury and pay the same to the parties entitled to it.

Should the auditor, when the warrants on the treasury shall be demanded by the parties in whose favor the damages were assessed, refuse to issue the same, they can, probably, resort to a mandate to compel him to do so.

Counsel for the appellant attempt to raise several questions with reference to the regularity of the proceedings in which the road was located and the damages assessed. But the board had jurisdiction of the subject-matter, and mere defects in the petition or other parts of the proceeding should not be held to render the proceeding void, when questioned collaterally, as it is here.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrer to the complaint.

*R. Brackenridge* and *W. H. Jones,* for appellant.
*W. H. Coombs* and *W. H. H. Miller,* for appellees.