No. 8279.

## CITY OF RICHMOND ET AL. *v.* McGIRR.

CITIES.—*Loans.*—The purchase of real estate by a city on a credit of ten years is not a loan within the meaning of the statute, R. S. 1881, section 3159, and is not prohibited thereby.

SAME.—*Implied Powers.*—*Statute Construed.*—Section 3106, clause 4, R. S. 1881, conferring on cities the general power, without restriction, to purchase real estate, for the purpose of constructing public buildings thereon, gives by implication the exclusive right to determine the expediency of the purchase, the power to purchase on credit, and also to issue its negotiable bonds for the purchase-money.

From the Wayne Superior Court.

*J. L. Rupe,* for appellants.

*S. A. Forkner,* for appellee.

FRANKLIN, C.—Appellee filed a complaint to enjoin the issuing and delivery of eight bonds, by the City of Richmond, to James L. Morrison, for the sum of $1,000 each, payable, respectively, in one, two, three, four, five, six, seven and eight years, bearing interest at the rate of six per cent. per annum, as the consideration for a certain lot of land, situated within the corporate limits of the said city, to be used for the purpose of erecting thereon public buildings.

The defendants severally demurred to the complaint, which demurrers were overruled. Answer by a denial and a special paragraph; demurrer to special paragraph sustained. These rulings were severally excepted to. The denial was withdrawn, and, for the want of a further answer, judgment was rendered for appellee, and an appeal taken by the defendants to this court.

The errors assigned in this court are:

1st. Overruling the demurrers to the complaint;

2d. Sustaining the demurrer to the special paragraph of the answer;

3d. In rendering final judgment herein.

The last error assigned is too general to present any question for decision.

As the first and second errors assigned, together, embrace the facts out of which the questions arise, which the counsel have submitted for decision, we will consider them both at the same time.

The complaint alleges that the City of Richmond is a municipal corporation, acting under the general laws of the State; that appellant Bennett is mayor, and appellant King is clerk, of the city; that the appellee is a taxpayer of said city, a resident, and owns both real and personal property therein; that the city already holds, by a perpetual lease, a lot or parcel of ground, upon which are located and erected large and commodious public buildings, sufficient for all the purposes of said city for the next ten years to come; that said city proposes to purchase of one Charles T. Price, Jr., Lot No. 122 in said city, and, in payment, to issue eight negotiable bonds of the city to one James L. Morrison for $1,000 each, falling due annually thereafter; that said city is now in debt to the amount of $160,600, evidenced by bonds, drawing annually an aggregate interest of $11,000; that the owner of said lot is a fraudulent grantee; that said lot is incumbered beyond its value; that the lot is not needed for city purposes, and its purchase would be a needless expenditure of the public money; that the issuing of the bonds would be contrary to, and in violation of, the law.

The complaint contains, as an exhibit, a copy of the ordinance of the common council, providing for the purchase of and payment for the lot, and also providing, " that upon the execution of a good and sufficient deed to said city, conveying a clear and perfect title to lot No. 122, in Starr's addition to the City of Richmond, and a delivery of the same by James L. Morrison to them, and upon the full satisfaction of all existing liens and incumbrances upon said real estate, said committee shall deliver said bonds to said James L. Morrison, at par, in full payment for said real estate."

The special answer avers, that, before the commencement of

this suit, the said Charles T. Price, Jr., had proposed in writing to sell said lot to the city for $8,000, and let the whole proceeds of the sale go in extinguishment of the liens and incumbrances upon it; that said James L. Morrison, who held the liens and incumbrances on the lot, also proposed in writing to accept said proceeds in full satisfaction thereof, and release the lot therefrom; that said Morrison then held said liens and incumbrances, amounting to about $13,000, (copies of these propositions were filed therewith as exhibits); that the common council of said city passed a resolution accepting said propositions, and declaring that it would be to the interest of said city to purchase said real estate upon the terms of said propositions, for the purpose of erecting thereon suitable public buildings for the use of said city authorities, and directing the committee of said council on public buildings and markets to accept, on the part of said city, the said propositions in writing, before referred to, of said Price and said Morrison, and purchase said real estate for the use of said city, for the purpose aforesaid, and upon the terms of the propositions aforesaid, a copy of which was filed therewith as an exhibit. And thereupon said committee of the common council on markets and public buildings did, long before the bringing of this suit, notify said Price and Morrison of the acceptance of their said propositions, and did, for and on behalf of the city, long before the commencement of this suit, so purchase said lot for said city, and, long before the bringing of this suit, said council passed the necessary ordinance providing for the payment for said lot, a copy of which was filed therewith as an exhibit.

The demurrers admit the facts in both of these pleadings to be true, and upon these facts a number of questions have been raised by counsel, though but one has been discussed at any considerable length.

Appellants, in their brief, in reply, say they do not question the power of a court of equity to enjoin the illegal issue of municipal bonds, nor the right of a taxpayer to maintain such

a suit, nor the new constitutional limitation of municipal indebtedness, nor that municipal bonds are governed by the law merchant.

It is insisted by appellee's counsel that the common council of the city had no power to create a debt and issue bonds therefor running longer than one and two years; and this is the substantial question in the case between the parties.

The 45th subdivision of the 53d section of the general law of this State for the incorporation of cities, 1 R. S. 1876, p. 295, reads as follows: "To purchase, hold or convey real estate for the purpose of constructing public buildings thereon," etc. This is among the enumerated powers of the common council in that section, which begins by saying: "They shall have the management and control of the finances of the city, and of all property, real and personal, belonging thereto; and shall have the additional power herein permitted and may make and publish by-laws and ordinances necessary to enforce the same. The common council shall have the power to enforce ordinances."

This 45th clause gives express authority to the common council to purchase real estate for the purpose of constructing public buildings thereon, and there can be no doubt of the right of the council to do so. The expediency of doing so, and when and how to do so, are questions controlled by the discretion of the common council. And the learned judge who tried this case in the court below, in his opinion, has well said, "that whenever the General Assembly has conferred upon any officer, body or tribunal, the right to exercise a discretion in regard to any matter, no court can, as a general rule, interfere with or control the exercise of that discretion." Dillon on Municipal Corporations, section 58; *Kelley* v. *City of Milwaukee*, 18 Wis. 83; *Barker* v. *Boston*, 12 Pick. 184; *Ex parte Fox*, 15 Pick. 243; *Parks* v. *Boston*, 8 Pick. 218; *Benjamin* v. *Wheeler*, 8 Gray, 409; *Evansville, etc., R. R. Co.* v. *City of Evansville*, 15 Ind. 395; *Macy* v. *The City of Indianapolis*, 17

Ind. 267; *The City of Greencastle* v. *Hazelett*, 23 Ind. 186; *Brinkmeyer* v. *The City of Evansville*, 29 Ind. 187.

Still, it is insisted by appellee's counsel, and was so decided by the court below, that all the provisions of the charter must be considered and construed together; and that the 83d section in the miscellaneous provisions should be considered in connection with, and as a modification or a construction of, the 45th clause of the 53d section. This 83d section reads as follows: "Loans may be made by a vote of two-thirds of the common council, in anticipation of the revenue of the current and following year, and payable within that period; but the aggregate amount of such loan in any fiscal year shall not exceed the levy and tax authorized by this act for municipal expenses for the same year." It is insisted that this section limits the amount of indebtedness that can be created in any one year, and that it must be paid in that and the succeeding year.

But it is insisted that the purchase of the lot and the agreeing to pay the consideration therefor were the same thing as borrowing money; that it was in substance Price paying his indebtedness to Morrison, and Morrison loaning the money to the city. The city got no money by loan or otherwise, but it got the property and agreed to pay for it. We can not see anything like a loan in the transaction.

We think there is a difference between borrowing money and the paying of an indebtedness. The Supreme Court of the United States has expressly so decided. In the case of *Gelpcke* v. *City of Dubuque*, 1 Wallace, 221, SWAYNE, J., in delivering the opinion of the court, held, that the execution of bonds, to pay an existing indebtedness of the city, was not within the prohibitions of the charter against the borrowing of money.

The case of *The Mayor, etc., of Baltimore* v. *Gill*, 31 Md. 375, referred to by appellee's counsel, was under a constitutional prohibition against the creation of an indebtedness beyond certain limits.

And, also, the case of *Jonas* v. *The City of Cincinnati*, 18 Ohio, 318, was under a prohibition contained in the charter: "That it shall not be lawful for the city council to make or authorize any contract * * for the payment of money at any day beyond the current fiscal year." Under this provision the court held that it was a violation of the spirit of the charter for the council to pass an ordinance for the payment of improvements, after the fiscal year had expired in which they were made.

We do not think either of these cases are applicable to the case under consideration. While the charter of the City of Richmond (the general law of the State) contains a limitation upon the borrowing of money, it contains no restriction upon the creation of indebtedness.

The charter expressly grants to the council the power to purchase the real estate mentioned in the complaint; and in the absence of any statutory mode being pointed out for the exercise of such power, it may contract with reference to such power the same as a natural person; and such power is implied from the general unlimited power granted. This rule, we think, arises from the necessity of the case, and is in harmony with the general rule of the law as established by the authorities. *Ketchum* v. *The City of Buffalo*, 14 N. Y. 356; *Brady* v. *The Mayor, etc., of Brooklyn*, 1 Barb. 584; *Halstead* v. *The Mayor, etc., of New York*, 5 Barb. 218; *Mott* v. *Hicks*, 1 Cow. 513; *Moss* v. *Oakley*, 2 Hill, 265; *Kelley* v. *Mayor, etc., of Brooklyn*, 4 Hill, 263; Field on Corporations, section 271; *City of Galena* v. *Corwith*, 48 Ill. 423; *City of Williamsport* v. *Commonwealth*, 84 Pa. St. 487; *City of Lafayette* v. *Cox*, 5 Ind. 38; *Hardy* v. *Merriweather*, 14 Ind. 203; *Daily* v. *City of Columbus*, 49 Ind. 169; *Kyle* v. *Malin*, 8 Ind. 34; Dillon Municipal Corporations, section 55, note 1, and sections 81 to 85.

The council having the right to purchase the property, in the absence of anything in the charter to the contrary, had the right to purchase it on a credit, and, having created an

indebtedness lawfully, from the very nature of the case, would have the right to execute evidences of that indebtedness, and obligations to pay the same. And as to the kind and form of the evidences and obligations to be executed, the council, in the exercise of a sound discretion, must determine, and their determination, in the absence of fraud, is final. *Sheffield School T'p* v. *Andress*, 56 Ind. 157 ; *School Town of Monticello* v. *Kendall*, 72 Ind. 91 ; *Bicknell* v. *Widner School T'p*, 73 Ind. 501.

Judge DILLON, in the third and recent edition of his valuable work on Municipal Corporations, after reviewing the authorities, and adhering to his former opposition to the implied power to execute negotiable bonds, says: " But it must be admitted that down to the present time a majority of the express adjudications on the subject favor the contrary opinion." See sections 117 to 130, with notes.

In speaking of the law of Indiana, as to the implied powers of municipal corporations (section 119), he says : " In Indiana, the doctrine is that corporations, along with the express and substantive powers conferred by their charters, take by implication all the reasonable modes of executing such powers which a natural person may adopt. It is a power incident to corporations in the absence of positive restriction to borrow money as means of executing the power." And he cites in a note a large number of authorities in support thereof.

Under the foregoing authorities, we think the doctrine is well established in this State that corporations possess all the necessary incidental powers to carry into full operation all their expressly granted powers, and for such purposes may legally execute commercial paper, such as negotiable bonds, in the absence of any restriction in the charter, or fraud in the parties.

We think the court below erred in overruling the demurrer to the complaint, and in sustaining the demurrer to the special paragraph of the answer.

For which the judgment below ought to be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing

opinion, that the judgment below be, and the same is, in all things, reversed, at appellee's cost, and that the cause be remanded, with instructions to the court below to sustain the demurrer to, the complaint, and for further proceedings in accordance with this opinion.