Filed Nov. 27, 1889.

———————◆———————

No. 15,165.

THE RUSHVILLE GAS COMPANY *v.* THE CITY OF RUSHVILLE ET AL.

MUNICIPAL CORPORATION.—*Common Council.—Quorum.—Members Present Declining to Vote.—Resolution.—Adoption of.* — Where three of the six members composing a common council vote in favor of a resolution, the other three members, although present, declining to vote, the resolution is legally adopted. The rule is, that if a quorum is present and

a majority of the quorum vote in favor of a measure, it will prevail, although an equal number should refrain from voting. A majority of the number of members required to constitute a quorum is sufficient.

SAME.—*Cities.—Lighting of.—Statute.—Authority Conferred.*—By an act en-entitled "An act in relation to the lighting of cities and towns, and furnishing the inhabitants thereof with the electric light," etc., authority is conferred on the common council to contract for lighting the city or to buy and operate the necessary plant and machinery. Elliott's Supp., section 794.

SAME.—*Statute.—Constitutionality.*—The above named act is constitutional, and is in compliance with the constitutional provisions as to subject and title.

SAME.—*Bonds.— When may be Issued.*—A municipal corporation with authority to purchase property may issue its bonds in payment, unless there is some statutory or constitutional prohibition.

From the Rush Circuit Court.

*B. L. Smith, C. Cambern, T. J. Newkirk* and *U. D. Cole,* for appellant.

*A. B. Irvin, G. H. Puntenny, W. A. Cullen* and *J. D. Megee,* for appellees.

ELLIOTT, J.—The mayor of the city of Rushville appointed a committee, composed of the members of the common .council, to investigate and report upon the question of the expediency of buying an electric-light plant and machinery. The committee, in due time, reported to the common council in favor of making the purchase. On the 3d day of April, 1889, action was taken on the report at a regular meeting, at which all of the members of the common council were present, and the following resolution was introduced :

" *Resolved,* That the report of the special committee, relating to lighting the city, be adopted, and that the officers therein named be instructed to sign the contract named therein."

Three of the six members composing the common council voted in favor of the resolution, but the other three members, although present, declined to vote, and the mayor de-

clared that it was adopted. By virtue of this resolution the city is about to enter into a contract with the companies named in the report for the purchase of an electric light plant and the power to run it, for which the city is to pay the sum of ten thousand one hundred and fifty dollars. Acting under the resolution the Edison Manufacturing Company has put up poles, strung wires on them, and placed in operation a system of electric lights, and the city will buy the plant and machinery, unless enjoined. The city has contracted with the Buckeye Engine Company for a steam engine and appliances to be used in operating the machinery of the Edison company plant, at a cost of two thousand two hundred dollars. Unless enjoined the city will issue bonds to pay for the plant, machinery, engine and appliances.

The meeting at which the resolution was adopted was a regular one, attended by all the members of the common council, and all who voted at all voted in favor of the resolution. The question, therefore, is: Does the fact that three of the members present declined to vote authorize the conclusion that the resolution was not legally adopted? In our judgment it does not.

The rule is that if there is a quorum present and a majority of the quorum vote in favor of a measure, it will prevail, although an equal number should refrain from voting. It is not the majority of the whole number of members present that is required; all that is requisite is a majority of the number of members required to constitute a quorum. If there had been four members of the common council present, and three had voted for the resolution and one had voted against it, or had not voted at all, no one would hesitate to affirm that the resolution was duly passed, and it can make no difference whether four or six members are present, since it is always the vote of the majority of the quorum that is effective. The mere presence of inactive members does not impair the right of the majority of the quorum to proceed with the business of the body. If members present

desire to defeat a measure they must vote against it, for inaction will not accomplish their purpose. Their silence is acquiescence, rather than opposition. Their refusal to vote is, in effect, a declaration that they consent that the majority of the quorum may act for the body of which they are members.

The rule we have asserted is a very old one. The doctrine is thus stated by one of the earliest writers on municipal corporations: "After an election has been properly proposed, whoever has a majority of those who vote, the assembly being sufficient, is elected, although a majority of the entire assembly altogether abstain from voting; because their presence suffices to constitute the elective body, and if they neglect to vote, it is their own fault, and shall not invalidate the act of the others, but be construed an assent to the determination of the majority of those who do vote." Willcock Munic. Corp., section 546. In a recent American work it is said: "Those who are present and who help to make up the quorum are expected to vote on every question, and their presence alone is enough to make the vote decisive and binding, whether they actually vote or not. The objects of legislation can not be defeated by the refusal of any one to vote, when present. If eighteen are present and nine vote, all in the affirmative, the measure is carried, the refusal of the other nine to vote being construed as a vote in the affirmative so far as any construction is necessary." Horr & Bemis Munic. Police Ordinances, 42. The principle involved is asserted in many cases. *State* v. *Green*, 37 Ohio St. 227; *Launtz* v. *People*, 113 Ill. 137; *County of Cass* v. *Johnston*, 95 U. S. 360, 369; *St. Joseph Tp.* v. *Rogers*, 16 Wall. 644; *State* v. *Mayor*, 37 Mo. 270; *Everett* v. *Smith*, 22 Minn. 53; *Oldknow* v. *Wainright*, 2 Burr. 1017; *King* v. *Bellringer*, 4 Term Rep. 810; *Inhabitants* v. *Stearns*, 21 Pick. 148.

We can not agree with appellant's counsel in the construc-

tion which they place upon the words of Judge Dillon found in section 279 of his work on Municipal Corporations, for, as we read what the author says, it is directly against the appellant. What is said by Judge Dillon is this: " So, if a board of village trustees consists of five members, and all or four are present, two can do no valid act, even though the others are disqualified by interest from voting, and, therefore, omit or decline to vote; their assenting to the measure voted for by the two will not make it valid. If three only were present they would constitute a quorum, then the votes of two, being a majority of the quorum, would be valid, certainly so where the three are all competent to act." In the first sentence Judge Dillon refers to cases where there is not a quorum present, because there is not the requisite number of qualified members in attendance. He is speaking of the effect of the presence of disqualified persons in that sentence, not of the effect of a vote of the majority of a quorum composed of qualified members of the body. In the last sentence he speaks of a case where there is a qualified quorum present, and he instances such a case as we have here, for here four would be a quorum, and, according to his rule, three of the four could adopt a measure if there were no opposing votes. The case referred to by the author in support of the proposition embodied in the first sentence quoted is that of *Coles* v. *Trustees,* 10 Wend. 659. In that case three of five town trustees were disqualified from voting, and there was, of course, no quorum of competent members, and consequently no capacity to act. The court said: " The act requires three out of five, or a majority, to make a quorum. If there were but three present, then the votes of two, being a majority, would be valid. Here were five trustees, three of whom were incompetent to vote by the act; and being so, it seems to to me, so far as the vote was concerned, they were not trustees for any purpose." It is obvious, therefore, that no such case was before the court as that now before us, for here all the members were present, and the measure was adopted by a ma-

jority vote of the quorum. One of the cases cited in support of the proposition contained in the second sentence of the section quoted by us is that of *Warnock* v. *City of Lafayette*, 4 La. Ann. 419, wherein it was held that a statute requiring a two-thirds vote to pass a measure meant two-thirds of the quorum present, and not two-thirds of the entire membership of the city council. Another case cited is *Buell* v. *Buckingham*, 16 Iowa, 284, in which the opinion was written by Judge DILLON himself, and where it was held that a majority of a bare quorum may bind the corporation. The opinion quotes with approval from the opinion of Lord MANSFIELD in *Rex* v. *Monday*, Cowper, 538, this language: " When the assembly are duly met, I take it to be clear law, that the corporate act may be done by the majority of those who have once regularly constituted the meeting." The opinion also approves Chancellor KENT's statement that "A majority of the quorum may decide."

The decision in the case of the *State* v. *Porter*, 113 Ind. 79, lends no support to the appellant's argument, and the reasoning of the court is strongly against it. The point actually decided was that no act could be lawfully done unless a quorum was present, but it was said : " The general rule is, that when a council, or collective body, consisting of a given number of members, is authorized by a statute to do an act, or to transact business, authority is thereby given to that body to act upon the subject committed to it, or to transact the business which it is authorized to conduct, whenever a majority of the members thereof are lawfully present. Cush. Par. Law, section 247. The body can not act without the presence of a quorum, and the act of the quorum is the act of the body. *State, ex rel.,* v. *Wilkesville Tp.*, 20 Ohio St. 288 ; *McFarland* v. *Crary*, 6 Wend. 298." The logical sequence from the premises thus laid down is that the vote of the majority of the quorum present is effective. In *Hamilton* v. *State*, 3 Ind. 452, this court quoted, with approval, the statement of the court in *Downing* v. *Ruger*, 21 Wend.

182, that " Where the authority is public, and the number is such as to admit of a majority, that will bind the minority, after all have duly met and conferred," but denied its application, because the statute required all the members of the body to be present at its meetings, and all were not present. The doctrine of *Hamilton* v. *State, supra*, is, therefore, not opposed to the later cases ; but, on the contrary, is in harmony with them, for it recognizes the general rule that where the statute does not otherwise provide, a majority of the quorum may, when a quorum is present, lawfully transact business. The case of *State, ex rel.*, v. *Edwards*, 114 Ind. 581, is not in point, for what was there decided is, that a county auditor has no right to vote upon a resolution although he has a right to vote in case an effort to elect a county superintendent results in a tie.

It would not benefit the appellant if we should hold that the councilmen present and not voting did, in effect, oppose the resolution, and, certainly, the utmost that can, with the faintest tinge of plausibility, be claimed, is that their votes must be counted as against the resolution. It is inconceivable that their silence should be allotted greater force than their active opposition would have been entitled to have assigned it had it been manifested. If we should assume that their votes are to be counted against the resolution, then the mayor had the casting vote, and, by declaring the resolution adopted, he gave it in favor of the measure. This is so expressly decided in *Small* v. *Orne*, 79 Maine, 78. But we think that the law is as stated by Willcock, and that the members present and not voting assented to the adoption of the resolution.

We have no doubt that the common council had power to contract for lighting the city or to furnish light from works of which it is, or may become, the owner. The power exists under the general act of incorporation. But we need not rest our decision upon that act, for the authority is conferred by an act entitled "An act in relation to the lighting

of cities and towns, and furnishing the inhabitants thereof with the electric light and other forms of light, and providing for the right of way and the assessment of damages, and declaring an emergency." Elliott's Supp., section 794. The object of this act is single, and it embraces but one subject. The subject is that of light, and the object that of enabling the citizens to obtain electric or other lights. The act is similar in its general scope and effect to acts providing for ' furnishing towns and cities with water, natural gas and artificial gas, and it is not obnoxious to any constitutional objection. Whatever was germane to the subject of the act, that is, the subject of light, it was proper to embody in the bill. We have no doubt of its constitutionality.

The first section of the act provides that the common council of any city shall " have power to light the streets, alleys, or other public places with the electric light, or other form of light, and to contract with any individual or corporation for lighting such alleys, streets and other public places with the electric light or other form of light," and this provision, taken in itself, is broad enough to authorize the common council to buy and operate the necessary plant and machinery. But statutes are not to be considered as isolated fragments of law, but as parts of one great system. *Bradley* v. *Thixton,* 117 Ind. 255 ; *Morrison* v. *Jacoby,* 114 Ind. 84 ; *Chicago, etc., R. W .Co.* v. *Summers,* 113 Ind. 10 ; *Robinson* v. *Rippey,* 111 Ind. 112 ; *Humphries* v. *Davis,* 100 Ind. 274. If there were any doubt as to the meaning of the act it would be removed by considering it, as it is our duty to do, in connection with the general act for the incorporation of cities, for that act confers very comprehensive powers upon municipal corporations as respects streets and public works, and contains many broad general clauses akin to those which Judge Dillon designates as " general welfare clauses." Our own decisions fully recognize the doctrine that municipal corporations do possess, under the general act, authority as broad as that here exercised, and the operation of that act is

certainly not limited or restricted by the act of 1883. *Wood* v. *Mears*, 12 Ind. 515 ; *City of Richmond* v. *McGirr*, 78 Ind. 192 ; *City of Anderson* v. *O'Conner*, 98 Ind. 168 ; *Leeds* v. *City of Richmond*, 102 Ind. 372.

Where a municipal corporation has authority to purchase property it may issue its bonds in payment unless there is some statutory or constitutional prohibition. *Miller* v. *Board, etc.*, 66 Ind. 162 ; *Second Nat'l Bank, etc.*, v. *Danville*, 60 Ind. 504; *Daily* v. *City of Columbus*, 49 Ind. 169 ; *Board, etc.*, v. *Day*, 19 Ind. 450 ; *City of Lafayette* v. *Cox*, 5 Ind. 38. In the case of *City of Richmond* v. *McGirr*, *supra*, it was said : "As to the kind and form of the evidences and obligations to be executed, the council, in the exercise of a sound discretion, must determine, and their determination, in the absence of fraud, is final." Many authorities are cited in support of this ruling, and it is undoubtedly correct as applied to municipal corporations of such a class as cities and counties, but not as applied to school corporations and like corporations, with very limited powers. The decision in the case of *City of Aurora* v. *West*, 22 Ind. 88, has no relevancy to the question here under discussion, for there the question was as to the power of the city to incur a debt in aid of a railroad company, while here the question is as to the authority of the city to issue bonds in payment for property it had power to purchase. The case of *State, ex rel.*, v. *Hauser*, 63 Ind. 155, does not decide that a city may not issue bonds to pay for water-works purchased ; what it decides is, that a city may not issue and sell bonds in order to obtain money to construct water-works. The difference between that case and this is very broad and very plain ; here bonds are to be issued to pay for property purchased ; there they were issued to be placed on the market for sale. Issuing bonds to pay for property purchased is a very different thing from issuing bonds to obtain money.

Judgment affirmed.

Filed Dec. 10, 1889.