**BOARD OF SCHOOL TRUSTEES OF the SOUTH VERMILLION SCHOOL CORPORATION, Defendant-Appellant,**

v.

**Deborah A. BENETTI, Plaintiff-Appellee.**

**No. 1–985A216.**

Court of Appeals of Indiana, First District.

May 21, 1986.

Rehearing Denied June 30, 1986.

William K. Steger, Bunger, Robertson, Kelley & Steger, Bloomington, James R. Bunch, Wallace, Campbell, Bunch, Shambach & Rennick, Covington, Joe E. Beardsley, II, Beardsley & Stengel, Clinton, for defendant-appellant.

Richard J. Darko, Robert R. Clark, Tabbert & Capehart, Indianapolis, Kipling N. White, White, White & Bray, Covington, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The Board of School Trustees of the South Vermillion School Corporation appeals the trial court's granting of a preliminary injunction enjoining the Board from refusing to recognize its teaching contract with Deborah A. Benetti until after resolution of the issues involved in a trial on the merits. To the extent that the trial court found Benetti had a valid teacher's contract we affirm but we reverse the preliminary injunction and remand to the trial court for further proceedings.

## FACTS

Deborah A. Benetti (Benetti) was hired by the South Vermillion Community School Corporation (the Corporation) to teach elementary art during the 1983–84 school year. This contract was terminated by the Board of School Trustees (the Board) in December of 1983, when the Board decided Benetti was not properly licensed for the position.[1] In April of 1984, Benetti filed suit challenging this action. That suit was proceeding through the discovery process in the Summer of 1985, when the events leading up to this appeal occurred.

On June 19, 1985, the corporation held its regular meeting of the Board with five of the seven members of the Board in attendance. The Vice-President of the Board, Charles Hendrix (Hendrix), made a motion to hire Benetti to fill a vacant elementary art teaching position. After apparently receiving the approval of the Board attorney regarding the validity of the motion, it was called to a vote and passed three to two. Usually, the Board's meetings followed an agenda setting forth the matters of the meeting which was circulated among Board members. While the possibility of re-hiring Benetti had been brought up at previous meetings, it was not on the agenda for the June 19, 1985 meeting.

Following the meeting, Hendrix went to Benetti's home, informed her of the Board's action, and instructed her to go to the corporation's office the following morning to sign an employment contract. On June 20, 1985, a Regular Teacher's Contract was signed by Benetti and by Hendrix and acting Superintendent Larry Vandeventer[2] on behalf of the corporation.

After conferring with Board President Gary Dick, Vandeventer called a special meeting for June 27, 1985, to review the decision to hire Benetti. All seven of the Board members were present. On a vote of four to three,[3] the Board decided not to approve the re-hiring of Benetti. Although present, Benetti was not given any formal notice of the meeting or of the Board's intention to terminate her contract. In ad-

---

1. At the August 15, 1985, injunction hearing Benetti testified she had taken additional coursework and was now fully certified to teach art in grades kindergarten through twelve.

2. The regular Superintendent had retired and was, as yet, unreplaced.

3. Dick explained, at the hearing, that during the period of his administration the Board had never approved any sort of contract by a vote of less than four members.

dition, no testimony was taken nor were findings made regarding incompetency, immorality, insubordination, or any other just cause for terminating Benetti's contract, as provided for in the contract. Thereafter, on July 22, 1985, Benetti filed a supplemental complaint alleging the corporation breached the subsequent Regular Teacher's Contract executed on June 20, 1985.

On July 26, 1985, Benetti filed a motion for a preliminary injunction. At a hearing on the motion Benetti testified that since the repudiation of her contract she had made thirteen applications and interviewed with numerous school corporations all with no positive response. Benetti stated that the damage to her reputation and the unfavorable publicity she received could be cured only by proving herself a "very good teacher." The trial court found that the contract executed by the parties complied with Indiana's statutory requirements. The court further noted that following repudiation, the Superintendent and screening committee had interviewed four candidates for the position and were ready to make a recommendation at the August meeting. Further, teachers in the school system were required to report for duty on August 26, 1985, with students starting the following day.

The trial court found Benetti to be a competent and qualified teacher and determined that damage to her teaching reputation was unmeasurable solely in monetary terms, thereby making a remedy at law inadequate. Noting that Benetti had demonstrated a reasonable likelihood of succeeding at trial, that the injury to her outweighed the harm an injunction would have on the Board, that the public interest would not be disserved by an injunction, and that Benetti's teaching reputation might suffer irreparable injury the trial court granted a preliminary injunction.[4] The injunction enjoined the Board from refusing to recognize the validity of Benetti's contract, employing anyone else to perform those duties during the 1985–86 school year, or taking

any action that would interfere with Benetti's contractual rights. Thereafter the Board perfected this appeal.

### ISSUES

1. Does Indiana law require that teachers' contracts be approved by a majority vote of a school corporation's entire governing body or merely the affirmative vote of a majority of a quorum which is present to transact business?

2. If the affirmative vote of a majority of a quorum which is present to transact business is all that is necessary, then did the trial court err in granting Benetti a preliminary injunction which, in essence, ordered the specific performance of her personal services contract?

### DISCUSSION AND DECISION

*Issue One*

In determining whether a majority vote of the entire School Board is required or if a majority vote of a quorum present to transact business is all that is necessary, two statutory enactments must be analyzed. The Indiana General School Powers Act (General Powers Act) sets out the basic guidelines for the organization and effective administration of state school systems. Indiana Code Section 20–5–1–3 (Burns 1985 Repl.) sets forth various applicable definitions:

"(a) 'School corporation' shall mean any local public school corporation established under the laws of the state of Indiana, including but not limited to school cities, school towns, metropolitan school districts, consolidated school corporations, county school corporations, community school corporations and united school corporations, excluding, however, school townships.

"(b) "Governing body' shall mean the board [or] commission charged by law with the responsibility of administering the affairs of a school corporation, including but not limited to, a board of

---

4. These are the basic factors a trial court must weigh in determining whether to grant a preliminary injunction. Indiana Rules of Procedure, Trial Rule 65(A).

school commissioners, metropolitan board of education, board of school trustees or board of trustees; and 'member' shall mean a member of such governing body...."

This section further states:

"(h) 'Laws relating to the employment, contracting, compensation and discharge of teachers' shall refer to [Sections 20–6.-1–1–2; 20–6.1–1–8; 20–6.1–3–2; 20–6.1–3–7; 20–6.1–4–1; 20–6.1–4–3; 20–6.1–4–4 *et seq.*; 20–6.1–5–1 *et seq.*; 20–6.1–6–1 *et seq.*], and any other laws relating to such employment, contracting, compensation and discharge."

Hence, chapter six controls the employment and contracting of teachers. *Gary Teachers Union v. School City of Gary* (1975), 165 Ind.App. 314, 320, 332 N.E.2d 256, 260, *trans. denied.* According to Indiana Code section 20–6.1–4–3:

"(a) Each contract entered into by a teacher and a school corporation must:

1) Be in writing;

2) Be signed by both parties; and

3) Contain:

(A) The beginning date of the school term as determined annually by the school corporation;

(B) The number of days in the school term as determined annually by the school corporation;

(C) The total salary to be paid during the school year; and

(D) The number of salary payments to be made during the school year.

The contract may provide for the annual determination of the teacher's annual compensation by a local salary schedule, which schedule is considered a part of each contract. This salary schedule may be changed by the school corporation on or before May 1 of a year; the changes begin the next school year. However, each teacher affected by the changes shall be furnished with printed copies of the changed schedule within thirty [30] days after its adoption.

Each contract is also governed by sections 1, 2, 3, 6(a), 6(b), 7, and 8 [20–6.1–5–1—20–6.1–5–3, 20–6.1–5–6(a), 20–6.1–5–6(b), 20–6.1–5–7, 20–6.1–5–8] of chapter 5 of this article.

(b) Each governing body shall provide the blank contract forms, carefully worded by the state superintendent, and shall have them signed. These contracts are public records open to inspection by the people of each school corporation.

(c) An action may be brought on a contract which conforms with subsections (a)(1), (a)(2) and (b) of this section."

This chapter also defines permanent[5] and semipermanent[6] teaching positions, provides their contract requirements, and specifies the manner in which these contracts may be cancelled.[7] Finally, chapter six provides for the contract rights of nonpermanent teachers,[8] those teachers not yet

---

**5.** A permanent teacher is a teacher who has served in a public school corporation for five [5] or more successive years and at any time enters into a contract for further service with that corporation. When a contract between a permanent teacher and a school corporation expires, that contract continues indefinitely as an indefinite contract. Ind.Code § 20–6.1–4–9 (Burns 1985 Repl.).

**6.** A semipermanent teacher is one who has served under contract in a public school corporation for two [2] successive years and, thereafter, enters into a teacher's contract for further service with that school corporation. Ind.Code § 20–6.1–4–9.5 (Burns 1985 Rep.).

**7.** *See* Indiana Code §§ 20–6.1–4–10 (Burns 1985 Repl.) and 20–6.1–4–10.5 (Burns 1985 Repl.) respectively.

**8.** Basically, a contract between a nonpermanent teacher and a school corporation continues in force on the same terms for the next school term following the date of termination set in the contract. Ind.Code § 20–6.1–4–14 (Burns 1985 Repl.). This statute further provides the nonpermanent teacher with certain rights regarding the review of a school corporation's decision not to continue the nonpermanent teacher's contract. Under this section, the school corporation may decide not to continue the nonpermanent teacher's contract for any reason considered relevant to the corporation's interest or because of the teacher's inability to perform his or her duties. Ind.Code § 20–6.1–4–14(d) (Burns 1985 Repl.).

falling under the definition of permanent or semipermanent educators. Benetti's contract with the School Board placed her within the statutory classification of a non-permanent teacher.

While chapter six controls the employment of teachers, it is silent with regard to what constitutes a quorum and what type of majority vote is necessary to approve the hiring of a teacher. Instead, the General Powers Act defines, in part, a quorum stating:

> "*Quorum.* At a meeting of the governing body, a majority of the members shall constitute a quorum. No action may be taken unless a quorum is present. Except where a larger vote is required by law with respect to any matter, a majority of the members present may adopt a resolution or take any action."

Ind.Code § 20–5–3–2 (Burns 1985 Repl.). The section of the General Powers Act pertaining to the approval of contracts states:

> "Notwithstanding any other law, the president and secretary of the governing body of any school corporation are entitled, on behalf of the school corporation, to sign any contract. These contracts may include, but are not limited to, employment contracts and contracts for goods and services; however, each contract must be approved by a majority of the governing body. In the absence of either the president or secretary of the governing body, the vice-president is entitled to sign the contracts with the officer who is present."

Ind.Code § 20–5–3–8 (Burns 1985 Repl.). Therefore, it appears necessary to reconcile the language of I.C. 20–5–3–2, requiring a majority of a quorum for voting, with the language of 20–5–3–8, which requires a majority of the governing body. Furthermore, Ind.Code § 20–5–3–8 does not explain whether a "majority of the governing body" refers to the entire governing body or the quorum present to transact business.

Determining legislative intent is foremost in construing any statute and, wherever possible, this court will give deference to that intent. *Smith v. State Medical Licensing Bd.* (1984), Ind.App., 459 N.E.2d 401, 404; *Indiana State Highway Comm'n v. Bates & Rogers Const., Inc.* (1983), Ind.App., 448 N.E.2d 321, 324; *Tapp v. State* (1980), Ind.App., 406 N.E.2d 296, 300, *trans. denied.* Indispensible to ascertaining the legislature's intent is a consideration of the goals sought to be achieved and the reasons and policy underlying a statute. *Frost v. Review Bd. of Indiana Employment Sec. Div.* (1982), Ind.App., 432 N.E.2d 459, 461. Consequently, it is necessary to view a statute within the context of the entire act, rather than in isolation, when construing the statute. *Smith,* at 404. In addition, words are given their plain meaning and this court may also look beyond the statute's language to the titles and headings of the statute. *Id.* Furthermore, we may look to subsequent enactments of legislation. *Highway Comm'n,* at 325. There is a strict presumption that a statute is constitutional which continues until it is clearly shown to be otherwise. *Wallman v. State* (1981), Ind.App., 419 N.E.2d 1346, 1348; *Tapp,* at 300. Moreover, it cannot be presumed that a legislature expects their enactment to be applied in an illogical or absurd manner, inconsistent with its underlying policies and goals. *Highway Comm'n,* at 324; *Frost,* at 461.

It is a general rule, with regard to municipal corporations, that the vote of a majority of a quorum is all that is necessary for the adoption or passage of any act which the body is empowered to perform. 4 McQuillan, *Municipal Corporations* § 13.27 (3d. ed. 1985 Rev.); *Rushville Gas Co. v. City of Rushville* (1889), 121 Ind. 206, 208, 23 N.E. 72, 73. This is true particularly where the resolution or motion is of a temporary or mere ministerial nature. 4 McQuillan, *Municipal Corporations* § 13.31b (3d ed. 1985 Rev.). However, where the ordinance or resolution is of a permanent character a majority vote of the constituent members of the body

may be required. *Id.* In *Rushville,* the Supreme Court of Indiana found that the vote of a majority of a quorum of city council members bound the city to a lighting contract. The court stated:

"It is not the majority of the whole number of members present that is required; all that is requisite is a majority of the number of members required to constitute a quorum. If there had been four members of the common council present, and three had voted for the resolution and one had voted against it, or had not voted at all, no one would hesitate to affirm that the resolution was duly passed, and it can make no difference whether four or six members are present, since it is always the vote of the majority of the quorum that is effective."

*Rushville,* at 208, 23 N.E. at 73. The court added that when a statute does not otherwise provide, a majority of the quorum may, when a majority is present, lawfully transact business. *Rushville,* at 212, 23 N.E. at 74.

In a case involving the hiring of a school superintendent, the Supreme Court of Indiana found that a majority vote of a quorum was sufficient. *State ex rel. Walden v. Vanosdal* (1892), 131 Ind. 388, 391–92, 31 N.E. 79, 80. In *Walden,* after a number of ballots for school superintendent failed to result in an election, three of the six trustees refused to take any further action in the proceedings and withdrew into the crowd of spectators. The court held that the quorum was not broken and that the election by the remaining trustees was valid despite the protesting trustees' refusals to vote. *Walden,* at 391, 31 N.E. at 80. This parallels the notion that an applicant for a teaching position must receive a majority vote of a quorum to be validly appointed. 78 C.J.S. *Schools and School Districts* § 177 (1952).

Statutes pertaining to other state regulated forums, defining a quorum and the vote necessary to perform acts empowered to the governing bodies of those other forums, shed some light on the legislature's intent. The statute pertaining to a city

legislative governing body defines a quorum as "[a] majority of all the elected members of the legislative body ...." Indiana Code section 36–4–6–10 (Burns 1981). This act delineates the appropriate vote necessary stating:

"(a) A requirement that an ordinance, resolution, or other action of the legislative body be passed by a majority vote means at least a majority vote of all the elected members.

"(b) A requirement that an ordinance, resolution, or other action of the legislative body be passed by a two-thirds [2/3] vote means at least a two-thirds [2/3] vote of all the elected members."

Indiana Code section 36–4–6–11 (Burns 1981). The statutes governing the meaning of a quorum and the vote required to transact city council business mirror these two statutes. *See* Indiana Code sections 36–3–4–9 (Burns 1981) and 36–3–4–10 (Burns 1981). The statutes governing counties state:

"(a) A majority of all the elected members constitutes a quorum, except as provided by subsection (b).

"(b) A county fiscal body may, by a two-thirds [2/3] vote, adopt a rule specifying that a certain number of members greater than a majority constitutes a quorum."

Indiana Code section 36–2–4–3 (Burns 1981).

· " 'Majority vote' and 'two-thirds vote' defined. (a) A requirement that an ordinance, resolution, or other action be passed by a majority vote means at least a majority vote of all elected members.

"(b) A requirement that an ordinance, resolution, or other action be passed by a two-thirds [2/3] vote means at least a two-thirds [2/3] vote of all the elected members."

Indiana Code section 36–2–4–4 (Burns 1981).

"Passage of ordinance requires majority vote—Exceptions. A majority vote is required to pass an ordinance, unless a greater vote is required by statute."

Indiana Code section 36–2–4–5 (Burns 1981). The statute governing meetings of a county school corporation, Indiana Code section 20–4–8–16 (Burns 1985), states:

"A quorum shall consist of a majority of the members of the board which in all cases shall be required for the transaction of business. The vote of a majority of those present shall be required for any motion, ordinance, or resolution to pass."

██ As these statutes demonstrate, the legislature is capable of stating the specific vote necessary for various governing entities to transact business. Usually, this is done by employing phrases such as "by a majority of the elected members" or a "majority of those present". However, in the present case, Ind.Code §§ 20–5–3–2 and 20–5–3–8 merely require the presence of a quorum and the approval of a majority of the governing body. This lack of specificity, in light of the legislature's specific language in other statutes, leads to the conclusion that the legislature intended the common law rule to control in this instance. This is further supported by the case law which holds that absent a specific requirement a majority of a quorum may transact business. *Rushville*, 121 Ind. at 212, 23 N.E. at 74. We hold that, under the present facts, a governing authority means a quorum and, therefore, Benetti's contract was validly approved by the corporation.

*Issue Two*

██ The School Board argues that the trial court's imposition of a preliminary injunction resulted in mandating the specific performance of a personal service contract. Generally, specific performance of personal service contracts is not favored by the law. *State ex rel. Cleary v. Board of School Commissioners of City of Indianapolis* (1982), Ind.App., 438 N.E.2d 12, 14 (principal's action for breach of employment contract); *Hall v. Delphi-Deer Creek Tp. School Corp.* (1934), 98 Ind.App. 409, 417, 189 N.E. 527, 530 (teacher's employment contract cannot be made basis of action for specific performance). In *Watson v. Burnett* (1939), 216 Ind. 216, 23

N.E.2d 420, however, the Supreme Court of Indiana permitted a permanent teacher to seek an injunction against a school board refusing to retain her. It should be noted though, that in *Watson* the real issue was whether a justifiable decrease in teachers authorized the retention by the board of a teacher who had not acquired permanent status and the cancellation of the contract of Burnett who had acquired such status and was qualified for the particular position. Under these circumstances, the court held that a temporary injunction would save the appellant from possible irreparable injury prior to a final hearing on the matter. *Watson*, at 224, 23 N.E.2d at 424. Therefore, the general rule disfavoring the granting of injunctive relief where personal service contracts are involved must be balanced against the discretion vested in the trial court in determining the necessity of a preliminary injunction as opposed to an action at law.

██ In the present case, the granting of a preliminary injunction was tantamount to ordering specific performance of Benetti's employment contract for her personal services. Moreover, there was no showing of uniqueness by Benetti that warranted going beyond an action at law as an appropriate remedy. Therefore, the trial court erred in granting the preliminary injunction but, as conceded by the parties during oral argument, this issue will soon become moot due to the close of the school year.

We therefore affirm the validity of Benetti's teaching contract but reverse the trial court's preliminary injunction and remand for further proceedings not inconsistent with this opinion.

ROBERTSON, P.J., and NEAL, J., concur.