CASE 13—PETITION EQUITY—OCTOBER 1.

# Southern Building and Loan Association v. Harris.

### APPEAL FROM FAYETTE CIRCUIT COURT.

1. BUILDING AND LOAN ASSOCIATIONS—USURY.—The plaintiff in order to secure a loan of two thousand dollars from defendant building and loan association, having subscribed for forty shares of stock in the association, for which he agreed to pay twenty-four dollars per month for eighty-four months, and to pay interest at the rate of six per cent. per annum on the whole amount borrowed for the entire eighty-four months, the monthly payments to be applied to his debt, the contract was usurious, for the reason that the plaintiff was required to pay legal interest on the entire two thousand dolllars for the whole time, when in fact the sum he owed was being gradually reduced, and, therefore, the amount he was required to pay as interest amounted to much more than legal interest on what he actually owed.

2. CONFLICT OF LAWS—PLACE OF CONTRACT.—Although the defendant is a Tennessee corporation and the contract in question would be enforced by the courts of Tennessee, yet as the contract in question was in fact executed in Kentucky and can not by any legal fiction be regarded as a Tennessee contract, its validity is to be determined by the laws of Kentucky.

3. RIGHT OF WITHDRAWAL.—As plaintiff alleges, and it is not denied, that under the charter and by-laws of the association he had the privilege of repaying his loan at any time upon thirty days' notice, and the right to withdraw from the association at any time after ninety days, and in the event of his exercise of his with-drawal privilege to receive all the money paid on his stock in monthly payments and six per cent. interest on same for the

average time of such payments, these privileges are dependent the one upon the other and may be exercised by one and the same transaction; and, therefore, the payment of the debt is not a condition precedent to the right to withdraw, but the plaintiff may tender, and require the association to accept, the balance he owes, after deducting what he is entitled to withdraw. Nor can the plaintiff in order to withdraw be required to make the monthly payments to the end of the eighty-four months as originally stipulated, or to pay in advance the amount of those payments less a discount, as this would make the right to withdraw of no value, and, besides, would require the plaintiff to pay the usury which has been pointed out.

GEO. C. WEBB FOR APPELLANT.

1. The contract is not usurious, even if the court should take the view that it is a simple loan of money by the association to Harris.

2. While appellee under the rules of the association had the right to repay his loan at any time, yet according to the correct and equitable rule for determining the amount due at the time of the withdrawal appellant was entitled to the amount for which it asks judgment by its answer and counter-claim. (Robertson v. American, &c., Association, 40 Md., 397; McCahan v. Columbian Association, 40 Md., 226; Hagerman v. Ohio, &c., Ass'n, 25 Ohio St., 186; Hoboken Ass'n v. Martin, 2 Beas. (N. J.), 427; Fox v. Cottage Ass'n, 81 Va., 677.)

3. The appellee on becoming a member of the association was subject to all the duties and liabilities imposed by its charter, by-laws and rules. (Thompson on Building Associations, pp. 21, 23 and 30; Paul v. Virginia, 8 Wall., 168.)

4. The appellee can not terminate his relations with the association until his obligation to the same is settled, and that obligation is to pay to the end of the series. The fact that he is allowed to discharge his obligation at an earlier period in no wise affects the amount which he should pay. (Endlich on Building Associations, sections 149-169, inclusive, and *especially* section 154.)

5. The contract is a Tennessee contract and is to be governed and construed by the laws of that State. (1 Daniel on Neg. Inst., secs. 865, 868, 879, 918, 919, 922; Addison on Contracts. p. 197, star paging; Lawson on Contracts, Sec. 32; North Hampton Live Stock and Ins. Co. v. Tuttle, 40 N. J. L., 476; Bell v. Packard, 69 Minn., 105; Dod v. Bonafee, 54 Am. Dec., 565; Gorden v. Phelps, 7 J. J. Marsh., 619; Story on Bills, secs. 148, 149; Whart. Confl. of Laws, sec. 507; 2 Parsons on Notes and Bills, 336; Edwards on Bills,

717, 718; Cooke v. Litchfield, 5 Land., 330; Boyce v. Nancy, 4
Dana, 236; Patterson v. N. Ass'n, 14 Lea, 677; Goddin v. Chipley,
7 B. Mon., 577; Stevens v. Gregg., 89 Ky., 464; Cocke v. Conig-
maker, 1 A. K. Marsh., 254; Pawlings, Adm'r, v. Sartin, 4 J. J.
Marsh., 238; Young v. Harris, 14 B. Mon., 559; Short
v. Trabue, 4 Met., 301; Carlyle v. Chambers, 4 Bush,
272; Brown v. Todd's Adm'r, MS. Op. Feb. 12, 1895; 3
Am. & Eng. Enc. of Law, p. 561; Strother v. Lucas, 12 Pet. (U. S.),
410; Darham v. Pullian, 5 Coldwell (Tenn.), 497; Andrews v.
Pond, 13 Pet., 65; Tillotson v. Tillotson, 34 Conn., 335; 2 Fields
Lawyers Briefs, sec. 112; Pomroy v. Ainsworth, 22 Barb. (N. Y.),
116; Fanning v. Consequa, 17 Johns. (N. Y.), 511; Miller v. Tiffany,
1 Wall., 310; Andrews v. Pond, 13 Pet., 77; DePau v. Humphreys,
11 Mart. (La.), 1; Fitch v. Remer, 1 Bissell, 337; Newman v. Ker-
shaw, 10 Wis., 333; Fisher v. Otis, 3 Pinney (Wis), 78; Miller v.
Tiffany, 1 Wallace, 298; Cromwell v. County of Sac., 6 Otto, 51;
Kellogg v. Miller, 2 McCrary, 395; Heat v. Griswold, 18 Blatch-
ford, 555; Lee v. Selleck, 32 Barb., 522; Hyde v. Goodnow, 3
Comst., 267; Everett v. Vendryes, 19 N. Y., 436; Aymar v. Sheldon,
12 Wend., 439; Smith v. Smith, 2 John., 235; Williams v. Wade,
1 Met., 82; Warren v. Lynch, 5 John. (N. Y.), 239; Curtiss v. Leav-
itt, 15 N. Y., 9; Ralph v. Brown, 3 W. & S. (Pa.), 395; Wood v.
Kelso, 27 Pa. St., 241; Commonwealth of Ky. v. Bassford, 6 Hill,
526; Parsons on Notes and Bills, chap. 10, sec. 3, subd. 6, sec. 14;
Jones on Mortgages, secs. 656 and 660; Story's Conflict of Laws,
(8 ed.), sec. 287a; Atwater v. Walker, 16 N. J. Eq., 42; Kavanaugh
v. Day, 10 R. I., 399; Townsend v. Riley, 46 N. H., 300; Central
Trust Co. v. Burton, 43 N. W. Rep., 141; DeWolf v. Johnson, 10
Wheat., 367; approved in Andrews v. Pond, 13 Peters, 65; Story
on Conflict of Laws secs. 287a, 293, 304, 305; Williams v. Fitzhugh,
37 N. Y., 444; Cope v. Wheeler, 41 N. Y., 312; Butter v. Olds, 11
Ia., citing Peck v. Mayo, 14 Vt., 33; Parsons' Mercantile Law,
321; Bigelow v. Burnham (Iowa), 49 N. W. Rep., 104; Sands v.
Smith, 1 Neb., 103; Newman v. Kershaw, 10 Wis., 275; Central
Trust Co. of N. Y. v. Burton, 43 N. W. Rep., 141 (Wis.)

6. Under the statute of Tennessee and the rulings of the court of
that State such a contract as we have here is legal and not usuri-
ous. (Patterson v. Workingmen's B. & L. Ass'n, 14 La., 677.)

J. R. MORTON FOR APPELLEE.

1. While the undertaking of appellee was to continue his monthly
payments of dues for the period of eighty-four months and even
longer, this obligation was subject to his right to sooner termi-
nate his relation with the association by exercising his with-

drawal privileges and repaying his loan upon proper notice to the association, as provided by the rules and by-laws of the association.

2. If it be conceded that appellant correctly defines the obligation of appellee, this court could not give effect to a contract bearing such fruits. (Henderson B. & L. Ass'n v. Johnson, 88 Ky., 191.)

3. What is termed comity does not authorize this court to give effect to a contract made in another State, which violates the fundamental law of this Commonwealth. (3 Am. & Eng. Enc. of Law, p. 507 and note; Watson v. Murray, 8 C. E. Green (N. J.), 257; Union Locomotive Co. v. Erie Railway Co., 8 Vr. (N. J.), 23; Columbia Fire Ins. Co. v. Kinyon, 8 Vr. (N. J.), 33.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

The appellant is a foreign corporation, created by the law of Tennessee, located and doing business at Knoxville, Tennessee, but permitted to do business in Kentucky, having complied with the laws of the State in reference thereto.

This controversy arises upon a transaction between appellant and M. L. Harris, appellee (the latter a resident of Lexington, Kentucky), whereby Harris secured from appellant a loan of two thousand dollars. This loan, however, was made not directly and in a straightforward business manner, but with much circumlocution, and was inaugurated by the subscription of Harris for forty shares of stock in the corporation, and for which appellee paid as initiation fee, one dollar per share, after which, and only upon the payment of which, would his application for a loan be considered. So after this subscription for the forty shares of stock, and for which appellee agreed to pay sixty cents per month on each share, being twenty-four dollars per month on the forty shares, for the period of eighty-four months, then the loan was negotiated of $2,000, upon which appellee was to pay interest at the rate of 6 per cent. per annum, on the whole amount, until by applying his payments of the

twenty-four dollars per month on his forty shares of stock to his debt, the principal should be repaid.

Interest is conceived to be a certain sum of money paid annually for the use or loan of other and a greater sum, regulated by contract of the parties within the limits of the law of the place or country where made, and is supposed in theory to represent the earning capacity of the sum borrowed, until such time as same may be repaid. When the principal is repaid the interest, of course, ceases, and this principle is applicable to partial payments as well as to the final payment of the whole.

The error that lies concealed in this cunningly devised scheme consists in the payment by the borrower of interest at the rate of one hundred and twenty dollars per year upon the entire sum of $2,000 during the entire period of eighty-four months, when in truth and in fact never after the payment of the first twenty-four dollars at the end of the first month, did the borrower owe the $2,000.

Under the terms of the contract as interpreted by appellant in the light of the charter and by-laws of the association, the matter practically works out this way:

At the end of twenty-one months, being one-fourth the time it is contemplated the debt will run, appellee by his monthly payments of $24.00 per month (in addition to the $10.00 per month interest) on the principal of his debt, will have paid $500.00 of the principal, leaving due only the sum of $1,500, and yet on this sum he still pays the $120 per year interest, being then at the rate of eight per cent. per annum.

And when at the expiration of forty-two months he shall in like manner, in addition to his interest, have paid $1,000 on the principal of his debt, leaving only $1,000 due, he yet pays on the $1,000, one hundred and twenty dollars per annum interest, being at the rate of twelve per cent.

In like manner at the end of sixty-three months continuing his interest and his payment of $24.00 per month on the principal he will have paid $1,500 of the principal of his loan, leaving but $500 unpaid, and yet he continues to pay on this sum the $120 per year interest, being at the rate of twenty-four per cent. per annum, until finally we reach the last month of the eighty four, when but $24.00 of the principal is due. On this he pays the $10.00 per month, being at the rate of $120 per year, and being at the rate of *five hundred per cent. interest* per annum charged and collected by this association. And yet in the face of these figures, which are incontrovertible, appellant insists that its contract is all legitimate and fair, that there is no fraud, no deception, and stranger still, no usury. And this last proposition he upholds by an elaborate brief and by the citation of many authorities. And by the adoption of many fictions, he says that in any event this transaction does not violate the usury laws of Kentucky. Among these fictions he says this contract was made in Tennessee, although it was in fact made at Lexington, Kentucky. And so far as this record discloses, appellee never was in Knoxville, Tennessee, in his life. The subscription for the stock (being the corner stone of all this scheme) was made in Kentucky.

The application for the loan written and signed here, the note dated, written and signed here, and the mortgage made to secure the payment for this stock, and thus the payment of the loan made was written, dated, executed, acknowledged and recorded in Fayette county, Kentucky. Yet appellant by counsel says that by intendment of law this contract was made at Knoxville, Tennessee, and is a Tennessee contract, and that under and by the laws of Tennessee as adjudged by the Supreme Court of that State this transaction is not usurious.

And further, appellant contends that by the comity between the States this contract being valid and free from usury in Tennessee, must be enforced in Kentucky.

We have been induced to set out this transaction in its true light, because appellant insists that this construction is of the gravest importance to it, and that unless it is upheld it can not do business in Kentucky at all, or only at a great loss and injury.

On this question of comity and on the assertion that this contract is all valid and not usurious by the laws of Tennessee, we desire again to submit the view of this court in reference to these transactions as was set forth and announced in the case of the Henderson Building and Loan Association v. Johnson, 88 Ky., 191. This court there said:

"Experience may demonstrate the necessity for such organizations and the peculiar benefits to be derived by the laboring classes from the liberal provisions contained in their charters, but the facts of this case are by no means convincing that either benevolence or charity constitutes the basis of this association.

"The members who abstain from bidding the enormous premiums for the loan of money must necessarily profit by the investment, but those who are so unfortunate as to become borrowers and required to pay the interest exacted, must ordinarily forfeit that stock, and the homes they have mortgaged be sold, and the proceeds applied to the benefit of those who act from motives of gain, and not from the love of mankind."

In that case the court held that transactions of that character were in violation of the fundamental law of the land.

A decision of this case, however, may be reached on another line.

Appellee paid his monthly dues of $24.00 per month for

two years and eight months, making $768, and paid his monthly interest for two years and six months, making $300. And then having given the thirty days' notice required by the charter and by-laws of the association, of his desire to pay off his loan and discontinue his connection with the company, tendered to the company the sum of $1,173.38, as the balance due on his loan, and demanded his obligations and the release of the mortgage on his home. This the company refused to do, and hence this suit, which being decided in favor of appellee Harris in the court below, the company has appealed.

This right of the appellee to repay the balance due on his indebtedness, and to terminate his connection with the company, is embraced in one of the clauses of its by-laws, forming part of the contract.

This right is set out by plaintiff below as follows: "That under the charter and by-laws of the association the plaintiff had the privilege of repaying his loan at any time upon thirty days' notice, and the right to withdraw from the association at any time after ninety days. And in the event of his exercise of his withdrawal privilege to receive all the money paid on his stock in monthly payments and six per cent interest on same for the average time of such payments, if withdrawn within the first two years, and ten per cent. if withdrawn after that time."

Appellee only claims the six per cent.

This allegation of the terms of the contract is nowhere denied by the answer, but in that appellant sets out substantially the same statement. Notice is not denied, the tender is not denied. A calculation shows the tender was for the full amount due.

It is further alleged that where stock is pledged for a loan that still same can be withdrawn upon the aforesaid terms

and on notice, upon the repayment of the loan, and this is not denied by the answer.

The chief contention of appellant is that appellee must, notwithstanding these provisions, first repay his debt as a condition precedent to his right to withdraw, while the appellee contends that they are mutual dependent stipulations, the one upon the other, and may be exercised and demanded by one and the same transaction. And this we think the correct view of the contract.

Appellant contends that appellee must discharge and pay off his entire obligation of $24.00 per month to the end of the eighty-four months, as originally stipulated, but that by paying now it will give appellee a discount on his obligation, and by this system of calculation making the sum of $1,538.16 as the amount demanded by the association. This is error, and to so construe these several provisions in the contract would be to annul and disregard altogether the rights secured to appellee to withdraw at any time by the repayment of the balance due on his loan.

Besides, to make the calculations on the full amount of the payments for the eighty-four months, would be to embrace in same all this usurious interest covertly concealed by the literal terms of the contract.

Judgment of the court below should be affirmed.