CASE 16—PETITION ORDINARY—OCTOBER 9.

# Wheeler v. Commonwealth.

### APPEAL FROM M'CRACKEN CIRCUIT COURT.

1. USURPATION OF OFFICE—Under section 485 of the Civil Code an action in the name of the Commonwealth may be brought by the attorney general to prevent the usurpation of a city office, that being an office "other than a county office."

2. SAME.—Although the office of City Attorney of a city of the third class is filled by the action of the council, and the appointee is its adviser, and may be removed at its pleasure, it is not necessary in order to constitute a usurpation of that office that the officer should be holding over the objection or without the consent of the council. As the public is interested in the office, the usurpation is complete if the holding is illegal, without regard to what the council may think or do in the premises short of legally electing or appointing him.

3. IN THE ELECTION OF CITY OFFICERS BY THE COUNCIL of a city, a quorum being present, a majority of those voting is sufficient to elect, provided that number is a majority of the number required to constitute a quorum. A majority of the whole number of members present is not required.

4. MEMBERS CASTING BLANK BALLOTS ARE TO BE TREATED AS NOT VOTING. And where under a rule or resolution adopted by the council the hindmost of several candidates has been dropped, a ballot cast for that candidate is to be treated as a blank ballot and not counted.

   All the members of a city council, twelve in number, were present. Seven members were necessary to constitute a quorum. Of three candidates for city attorney one received six (6) votes, another five (5) and another one (1). After several ballots the candidate receiving one vote was, under a resolution to that effect, declared by the mayor to be dropped. Another ballot was taken with the same result, and the mayor then declared that the vote for the candidate who had been dropped could not be counted, and that the appellant, who had received six votes, was elected. Held—That this was proper, and that appellant is entitled to the office.

J. W. BLOOMFIELD FOR APPELLANT.

1. There is no statute or any rule of law requiring a majority of all

the members of the city council to elect a city attorney. A plurality is sufficient. (Ky. Stats., sections 3311, 3294, 3272, 3271; Morton v. Youngerman, 89 Ky., 506.)

2. Whether a plurality or a majority was required appellant was elected.

3. The office of city attorney being an office not held for a fixed term (Speed, &c., v. Crawford, 3 Met., 213), but held at the will and pleasure of the city council, the action herein does not lie. (Cooley's Const. Limit. (6th ed.) 158; Ky. Stats., sections 3313, 3249, 3252, 3254.)

CHARLES K. WHEELER on same side.

1. In the absence of a statutory or constitutional provision to the contrary a plurality of votes is sufficient to elect. And this rule applies as well to. elections by a limited number of electors as to elections by the whole people. (McCrary on Elections (2d ed.) section 179; Meacham on Public Officers, section 204, p. 204, ed. 1890; *Idem* p. 206, note 1; Morton v. Youngerman, 89 Ky., 505.)

2. When a councilman refuses to abide by a reasonable rule, and continues to cast his ballot in defiance of it, his ballot is to be considered as though he had not voted at all. (1 Beach on Public Corporations, sec. 157.)

3. Even if appellant did not receive the number of votes required to elect he can not be regarded as a usurper. (Ky. Stats., sec. 3249.)

WM. J. HENDRICK, Attorney-General, L. D. HUSBANDS, and THOMAS E. MOSS for appellee.

1. A mere plurality of the votes cast is not enough to elect one to office by a representative body of a municipality. (1 Dillon Mun. Corp. top page 294, sec. 278; Laurence v. Ingersoll, 88 Tenn., 52; s. c., 17 Am. St. Rep., 870; 2 Kent, top pages, 336-338.)

A majority of votes voting means of those voting and not merely of those voting on the question. (State v. Wiant, 49 Ill., 263; State v. Beachard, 34 N. W. Rep., 342.)

This case is unlike Morton v. Youngerman, 89 Ky., 505. (Ky. Stats., sec. 3281.)

2. The motion of Baker that the "hindmost man be dropped," although carried, could not apply to the election then at hand, and because it was intended to apply to no other time or election it was a nullity. It lacked every essential of a rule or by-law, and should be disregarded. (Peoples Pulford v. Fire Department City of Detroit, 5 American Corp. Cases, 479; 1 Bush, 493.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The question in this case is whether or not the appellant legally holds the office of city attorney of the city of Paducah, to which he claims to have been elected by the city council on the 18th of December, 1893.

The proceeding to oust him was instituted by the Commonwealth through the attorney-general, as provided in sections 483, 484 and 485 of the Civil Code. The section first named provides that "if a person usurp an office or franchise, the person entitled thereto or the Commonwealth, may prevent the usurpation by an ordinary action." The second named section makes it the duty of the several Commonwealth's attorneys to institute such actions against usurpers of county offices or franchises, and the next section provides that "for usurpation of other than county offices or franchises, the action by the Commonwealth shall be instituted and prosecuted by the attorney-general."

While the point is not urged by the appellant it has been suggested that the law did not contemplate a prosecution by the attorney-general of actions to prevent usurpation of city or town offices. That for usurpation of offices of a county the action was to be instituted by the several attorneys for the Commonwealth in whose district the act was committed, and only where the office was one in a district larger than a county, or a State office, could the action be properly brought by the attorney-general.

We are disposed to construe the section literally. The language, "for usurpation of other than county offices," refers to all offices save county offices, and especially do we so conclude as there seems to be no other appropriate remedy provided.

It is further suggested that as the office in question is

filled by the action of the council and the appointee is its
adviser, and may be removed at its pleasure, there can be
no usurpation unless the officer is holding over the objection
or without the consent of the council; a state of case not al-
leged in the petition, or shown to exist in the record. It
seems to us, however, that as the public is interested in the
office, as it indeed was created not for the benefit of the
council, but for the people, the usurpation is complete if
the holding is illegal, without regard to what the council
may think or do in the premises, short of legally elect-
ing or appointing him.     Any other view of the mat-
ter would permit the council to aid in the usurpation or
connive at it.

The question, however, is, was the appellant legally
elected? The city of Paducah is one of the third class and
the statute provides (section 3311 Ky. Stat.) that "each
council shall, at its first regular meeting or within one
month thereafter, elect a city attorney who shall hold his
office for two years and until his successor is elected and
qualified." The statute further provides that the mayor
"shall be the presiding officer of the council, shall decide all
questions of order, and in case of a tie, shall cast the decid-
ing vote." (Section 3294.)   Further (section 3270), that "the
common council shall be composed of twelve members,"
and (section 3271) "not less than seven members shall con-
stitute a quorum to do business." It is also provided (sec-
tion 3272) that the council "may determine its own rules
of proceeding," etc.   At the meeting of the council at which
the alleged election of appellant, Wheeler, took place, the
mayor and each member of the council were present and
answered to the roll call.

When the time came for the election of a city attorney,
the names of Wheeler, Husbands and Thomas were placed

in nomination, and nominations were then declared closed. The call of the roll disclosed a vote of six for Wheeler, five for Husbands and one for Thomas. The mayor declared that there was no election and directed the clerk to again call the roll. The result was the same. After another ballot to the same effect, a member "moved that after the next ballot, the hindmost candidate be dropped," and upon a call of the roll, the vote stood six for and six against the motion. The mayor then voted "yea."

Two other ballots followed with the same result—the same members continuing to vote for Thomas after the mayor had declared that he was dropped under the resolution. Whereupon, the mayor declared that that member's vote could not be counted and announced that he thought Wheeler was elected. The member voting for Thomas then read section 3294, and the mayor then declared Wheeler elected. The member then appealed from the decision of the mayor, and upon a roll call the vote stood, for sustaining the mayor's decision, six; against it, six, and there being a tie, the mayor voted "yea." Thereupon, the appellant took the oath, executed bond as such attorney and has since been acting as such.

It is contended for the State that the alleged election of Wheeler was invalid because he did not get a majority of the votes of those present and voting. It is insisted that the law requires, first, a quorum to be present, and second, a concurrence of a majority of the quorum before any legal act can be done. And this, we are convinced, is the true rule, except that only a majority of the quorum present and actually voting in the election, under the prescribed rules and regulations of the board, is required. Those present, as shown by the roll call or otherwise, may be counted to make the quorum; but if they do not vote, they must be

deemed to acquiesce in the action of those who do vote. (Cooley's Const., Lim., 6th Ed., p. 748n.) The decided weight of authority is to the effect that a majority vote need not be a majority of all those present if it has a majority of those voting, and a quorum is in fact present.

Thus in Morton v. Youngerman, 89 Ky., 505, the council was composed of twelve members, all of whom were present. Morton received three votes, three members refrained from voting and Youngerman received six votes. The latter was held to have been elected. And it was said that without the resolution, to which we will refer presently, Youngerman was elected "because he obtained a majority of the nine votes cast, the entire body being present." So in Rushville Gas Co. v. City of Rushville (121 Ind., 206, 6 L. R. A., 315), it was held that "the refusal of half the members of a council to vote, when all are present, will not defeat action when a majority of those necessary for a quorum vote in favor of a measure."

From these authorities it is clear that the six votes received by the appellant would have been sufficient if the five members who voted for Husbands and the one who voted for Thomas had refrained from voting. For we have seen that "it is not a majority of the whole number of members present that is required; all that is requisite is a majority of members required to constitute a quorum." And so would the six votes have been sufficient if the other six or any one of them had been cast in blank; for it is equally well settled that blank votes are not to be counted. Mr. Cooley says that whether the election is by a plurality or a majority, "the blank votes, if any, are not to be counted, and a candidate may therefore be chosen without receiving a plurality or a majority of voices of those who actually participated in the election." (Const. Lim., 3d Ed., section 14.)

In the present case; however, we have no blanks and no refusal to vote, and while the six votes for Wheeler are conceded to be regular and were properly counted, those for Husbands were no less so, and the question remains, upon what ground could the presiding officer legally refuse to count the vote for Thomas or treat it as one cast in blank? We have seen that the duty of electing a city attorney was imposed on the council in express terms. The members were thus constituted a definite body of electors for that purpose. To perform that duty as well as others, they were authorized in express language to determine their own rules of proceeding. Confronted by the requirement of the statute that they should elect an attorney, and by the further fact a tie vote, in which event the mayor could vote and thus secure an election, could not be reached as long as more than two candidates were being voted for, a rule or resolution was moved and regularly adopted, by which the name of the hindmost candidate should be dropped after the next succeeding ballot. The members were acting not only as councilmen but as electors, and were permitted to adopt all reasonable rules necessary to transact their business not inconsistent with the general law. As electors they might not adopt an ordinance or a by-law, but as electors and as members of the council charged with the especial duty of electing an officer of the city, they might, it seems to us, adopt any reasonable rule by which the duty might be performed, and especially so, if it appeared to them that that duty could not have been performed otherwise.

It was not a rule, as urged by counsel, to deprive a member of his vote. Unless the member desired to cast his vote for a candidate for whom it was no longer competent to vote under the resolution of the body of which he was a member, he could still vote between the eligible and competent

candidates. It is true, his vote might have produced a tie and thus insured an election, but this would only have effected a discharge of his duty and those of his associates.

In the Morton-Youngerman case this court said: "It is also a rule that when nominations are made, 'after the fourth roll call, should there be no election, the candidate receiving the lowest number of votes shall be dropped, and so on, until an election is had; and in case of a tie the presiding officer shall decide.'" On the fifth roll call one of the candidates, under the rule prescribed, was dropped, and on the sixth roll call the three members who declined to vote for either of the two remaining candidates, offered to cast their votes for the candidate who had been dropped and this was denied them. Of this rule and the proceedings under it, this court said: "We perceive no reason why the council could not adopt a rule which would facilitate the proceedings and result in an election, that otherwise would have prevented the election altogether at the whim of the minority." It is contended by appellee that the "rule" thus approved was a general one, and was a by-law or ordinance duly enacted for the regulation of all elections by the council.

On the other hand, counsel for the appellant says the record discloses that it was adopted pending the election in controversy in that case. Be that as it may, we think the point is unimportant. It was a competent and necessary rule or regulation for the particular occasion, and as such was binding on the members. It was not competent and lawful under the rule for a member to vote for a candidate whose name had thus been dropped, and the presiding officer properly refused to count it.

The official proceedings of the council are made part of the Commonwealth's petition, and the facts appearing as

stated above, the demurrer of the defendant, Wheeler, should have been sustained and the petition dismissed, and to that end the judgment is reversed for proceedings consistent with this opinion.