STATE, *ex rel.* AUSTIN MILLER, v. TOM MARSHALL, as President of the City Council of the City of Jacksonville.

184 So. 870.
185 So. 428.
Opinion Filed November 28, 1938.
Rehearing Denied December 23, 1938.

*L. R. Milton, C. C. Howell* and *Austin Miller,* for Relator;
*George M. Powell* and *George C. Bedell,* for Respondent.

PER CURIAM.—It has been made to appear by an alternative writ of mandamus that the relator, Austin Miller, was appointed to the office of City Attorney of the City of Jacksonville by the City Commissioners thereof and was confirmed by an affirmative two-thirds vote of the members of the City Council of Jacksonville, as required by its Charter, to fill an unexpired term of a former City Attorney; and in December, 1925, the relator, Austin Miller, again was appointed by the City Commission to the office of City Attorney of said City and confirmed by an affirmative vote of two-thirds of the members of the City Council of the City of Jacksonville for a period of two years, beginning January 1, 1926, and that relator has been duly appointed City Attorney each term by the City Commission and confirmed by a two-thirds vote of the members of the City Council until the 4th day of December, 1935, when fifteen councilmen voted for the approval of the appointment and eight councilmen voted for the dissaproval thereof.

On the 9th day of February, 1938, relator was duly appointed to the office of City Attorney by the City Commission of the City of Jacksonville for a period of two years, beginning January 1, 1938, and when considered by the City

Council fourteen councilmen voted for the approval thereof, and seven councilmen voted for the disapproval, and two councilmen passed their vote. The relator, Austin Miller, continues in office as City Attorney and is now performing the duties thereof, and no successor has been appointed, confirmed, elected or qualified. The purpose of this suit is to require the respondent to sign, as President of the City Council of the City of Jacksonville under Ordinance No. Y-41, Bill Y-81, vouchers in behalf of the relator for his salary as City Attorney, it having been made to appear that the City Auditor and City Recorder, in conformity with the Charter and Ordinance, had affixed their signatures thereto, but the respondent has failed and refused and continues to fail and refuse to sign the said vouchers which the Ordinance and Charter of the City of Jacksonville requires him to do as President of the City Council of said City.

The respondent moved to quash the alternative writ of mandamus on grounds: (a) that it has not been made to appear that there was sufficient money with which to pay said vouchers, or either of them, after payment of vouchers previously issued had been signed and made payable out of said fund; (b) the facts appearing in the alternative writ are insufficient to compel the respondent, under Section 10, Chapter 16493, Laws of Florida, Acts of 1933, to sign the said vouchers payable to the relator.

The respondent filed a return or answer to the alternative writ to the effect that on the 9th day of February, 1938, the City Commission of said City, appointed relator as City Attorney, and on the 12th day of July, 1938, the City Council again failed to confirm the appointment for the term beginning January 1, 1938, because Section 122 of the City Charter provides that the City Attorney, appointed by the Commission, shall be approved by an affirmative vote of two-thirds of the members of the City Council. The City Coun-

cil consists of twenty-three members and relator obtained the approval of fourteen councilmen. Seven Councilmen voted for disapproval, and two Councilmen passed their vote, and because of said vote an approval of the City Council failed and no lawful authority existed for the signing of the vouchers by the respondent as President of the City Council.

Counsel for relator filed a motion for a peremptory writ of mandamus, notwitstanding the return. One of the grounds of the motion is that the return sets forth no defense to this cause of action and sets forth no legal reasons why the peremptory writ should not issue.

Section 122 of the compiled City Charter of the City of Jacksonville provides that the City Attorney shall be appointed by the City Commission subject to the approval by the affirmative vote of two-thirds of the members of the City Council. His term of office shall be for two years, beginning the first day of January of even years. It is relator's contention that when the question of approval or disapproval of the confirmation by the City Council of the appointment of the relator to the office of City Attorney was before the Council, it then and there became the official duty of each member of the Council to vote for approval or to vote against the approval, and when two members thereof did not vote but "passed," then as a matter of law these votes should be counted for approval of confirmation. While counsel for respondent contends that an approval of confirmation under Section 122, *supra,* requires nothing less than two-thirds vote of the 23 members constituting the membership of the City Council, and the record discloses 14 Councilmen voted for approval, seven voted against approval and two passed, and for this reason there was not a confirmation within the meaning and spirit of the statute and the duty was on the City Commission to appoint a suitable person to the office of City Attorney of the City of Jacksonville.

We have no statute in Florida controlling the point in issue and it now becomes our duty to examine authorities of other jurisdictions where statutes covering similar points or issues have been construed or interpreted.

San Christian Inv. Co., v. City and County of San Francisco, 167 Cal. 762, 141 Pac. 384, was a case in which the charter of the City of San Francisco provided that taxes of said city should not exceed a certain amount, except in case of great necessity or emergency, when the amount or limitation could be suspended, but then no increase of the rate of taxation should be valid; or lawful unless authorized by an ordinance passed by the unanimous vote of the Supervisors and approved by the Mayor. It appears that the City had 18 Supervisors and 17 were present and voted for the Ordinance and one was absent and did not vote, and the question arose as to whether or not the Ordinance was lawfully adopted. The Court held that the Ordinance was lawfully adopted within the meaning of the provision of the Charter, and in so doing, in part, said:

"There can be no doubt whatsoever of the meaning of this language, and there can be no successful answer to the declaration of the respondent that, if in the section under consideration the charter had meant the unanimous vote of *all* the supervisors, it would have said so, as it did say in the less important section just quoted. Moreover, good and sufficient reasons appear why the charter framers deemed it wise not to require the unanimous vote of all of the supervisors. Those reasons at once occur to the mind. Their action was to be called forth, and could properly be called forth, only in case of great necessity or emergency. It might well be that in such a case it would be difficult, if not impossible, to assemble all of the members of the board, and a perilous and perhaps calamitous delay might result. Upon the other hand, the interests of the taxpayers were amply

guarded by the provision that the suspension could not take place except by the unanimous vote of all present. Therefore, if the attempted suspension was, in fact, unwarranted, the voice of one member of the board raised in protest and voting in the negative would defeat the scheme. Indeed, it is the single instance presented by the charter where one dissenting vote will block legislation. Wherefore, it appearing from the complaint itself that 17 out of the 18 supervisors (all of the board who were actually present) voted for the ordinance, and there being no dissenting vote, the ordinance was duly adopted within the meaning and provisions of the charter, and the demurrer to the complaint on that ground was properly sustained."

In the case of McMillin v. Neely, 66 W. Va. 496, 66 S. E. 635, McMillin was elected as Councilman of the City of Fairmount, West Virginia, took the oath of office and was admitted as a member of the City Council. It was contended that McMillin was incompetent to hold the office because he was not a freeholder. The Council tried the issue and by a vote of 5 to 4 declared the office of councilman held by McMillin to be vacant. The charter provided that "no person shall be eligible to the office of Mayor * * * unless he is a freeholder." The charter likewise provided that "the majority of the whole number of officers, mentioned * * * shall be necessary to the transaction of any business whatever." The charter provided for a Mayor and ten Councilmen. It is contended that a majority of the whole number of the voters not having voted to declare the office vacant, the order of the City Council removing McMillin was void. The court held that the provision that a majority of the members should be required to transact business does not mean that such majority must vote in favor of each and every act or action, great or small. Such a construction would be unusual, inconvenient and detri-

mental to the public interest. It means only to require a majority for a quorum.

In the case of Morton y. Jungerman, 89 Ky. 905, 12 S. W. 944, the City of Newport, Kentucky, had a regulation adopted by the City Council, providing that a majority of the members elected and voting shall be necessary to choose any officer to be elected by the Board. The City had 12 councilmen and 9 out of the 12 voted for a certain candidate and 3 members declined to vote for either candidate. A plurality of the votes cast, there being a quorum present and voting, elected the officer. "If all the members of the select body or committee, or if all the agents, are assembled, or if all have been duly notified, and the minority refuse or neglect to meet with the others, a majority of those present may act, provided those present constitute a majority of the whole number. In other words, in such a case, a major part of the whole is necessary to constitute a quorum, and a majority of the quorum may act." There was nothing unreasonable in the regulation and the appellee was entitled to the office.

In the case of Zeiler v. Central Ry. Co., 84 Md. 304, 35 Atl. 932. a suit was brought against the City of Baltimore seeking to restrain the city officers from issuing or approving a permit authorizing the Central Ry. Co. from digging up and placing down tracks on a certain street of said City as authorized by an ordinance. A rule of the city council provided that every ordinance, before being put on its final passage, should have readings on separate days, unless two-thirds of the members of the branch should by vote otherwise direct. It was shown that the ordinance in question was placed on final passage and Mr. Allen moved a suspension of the rules. The yeas and nays were called for and fourteen members voted in the affirmative and six in the negative, whereupon it was announced that two-thirds of

the members having voted in the affirmative, the motion was declared adopted. Two-thirds of the members of the branch, the court held, meant two-thirds of the members voting, not being less than a majority, and not two-thirds of all the members.

In the case of Murdoch v. Strange, 99 Md. 89, 57 Atl. 628, 3 Am. & Eng. Ann. Cas. 66, the City of Annapolis, through its council, had an election for the office of market master. The record showed that R. E. Strange received four votes, J. H. Murdoch received three votes, and there was one blank ballot. The Mayor declared that there was no election. It was held that R. E. Strange was elected because the councilman voting the blank ballot was in law held to acquiesce in and approve the vote of the majority. The Court, in part, said:

"It was contended, however, by the counsel for the appellant that there was something in conflict with this statement, in the following citation from the same work (1 Dillon Mun. Corp. [4th Ed.] Sec. 278, Sec. 279). 'So if a board of village trustees consists of five members, and all or four are present, two can do no valid act, even though the others are disqualified by interest from voting, and therefore omit or decline to vote; their assenting to the measure voted for by the two will not make it valid. If three only were present they would constitute a quorum, then the votes of two, being a majority of the quorum, would be valid; certainly so when the three were all competent to act.' This was regarded in Lawrence v. Ingersoll, 88 Tenn. 65, as an authority for counting a blank ballot for the purpose of showing that no person received a legal majority. But in the case of The Rushville Gas Co. v. Rushville, 121 Ind. 210, the Indiana Court conclusively shows that it should have no such significance. In the first sentence, by reference to the case of Coles v. Williamsburgh, 10 Wend. (N. .) 659, it is clear

that the author was referring to the effect of the presence of disqualified persons, whereby there was no valid quorum present, so far as the voting was concerned. In the second sentence, he but announced the well-known principle, that where only a bare quorum was present a majority may bind the quorum. Buell v. Buckingham, 16 Iowa 284; Rex v. Monday, 2 Cowp. 538.

"It is difficult to assign any sufficient reason why this rule, concededly applicable to indefinite assemblies, should not apply also to definite. Upon what principle should a member of the council of Annapolis by simply depositing a blank ballot be enabled to prevent others from acting who are willing to perform their duty of making an election: As was said in Grant on Corporations, p. 204, *et seq.*, the elector is present as an elector, his presence counts as such to make up the requisite number of electors where a certain number is necessary, but he attends only as an elector to perform the duty which is cast on him by the franchise he enjoys as an elector; he can speak only in a particular language; he can only do certain acts; any other language means nothing; any other act is merely null; his duty is to assist in making an election. If he dissents from the choice of A, who is qualified, he must say so by voting for some other who is qualified; he has no right to employ his franchise merely in preventing an election, and so defeating the object for which he is empowered and bound to attend the elective assembly of the corporation.'

"The overwhelming weight of authority is in favor of these views. They have been applied at least as far back as the leading case of Oldknow v. Wainwright, 2 Burr. 1017. The election there was of a town clerk by the mayor, alderman and common council the entire number of electors being twenty-five, twenty-one assembled, nine of whom voted for the candidate, but twelve did not vote at all. Lord Mans-

field said: 'Whenever electors are present and don't vote at all, they virtually acquiesce in the election made by those who do.' This case and other English cases were reviewed in Gosling v. Beley, 4 H. L. Cas. 679, and the doctrine of Lord Mansfield in Oldknow's Case was approved. The following were cases of elections by definite assemblies, where the same principles were affirmed; State v. Parker, 32 N. J. L. 341; Wheeler v. Com., 98 Ky. 59; State v. Young, 19 Mont. 244; Atty.-Gen. v. Shepard, 62 N. H. 384; Rushville Gas Co. v. Rushville, 121 Ind. 206; State v. Vanosdal, 131 Ind. 388; State v. Dillon, 125 Ind. 65; Booker v. Young, 12 Gratt. (Va.) 305; Launtz v. People, 113 Ill. 144; State v. Green, 37 Ohio St. 227; see also Willcock on Mun. Corp., sec. 546." See Tucker v. Raney, 145 Kan. 256, 65 Pac. (2nd) 329; Southern Building & Loan Ass'n. v. Harris, 98 Ky. 41; 32 S. W. 261; Abels v. McKeen, 18 N. J. Eq. 462; State, ex rel. Shinnich, v. Green, 37 Ohio 227; Martin v. Ballenger, 25 Cal. App. (2nd) 435, 77 Pac. (2nd) 888; Rushville Gas. Co. v. City of Rushville, 121 Ind. 206, 23 N. E. 72; State, ex rel. Burdick, v. Tyrrell, 158 Wis. 425, 149 S. W. 280.

The weight of authority in the Country appear to support the common law rule as enunciated by Lord Mansfield in Oldknow v. Wainwright, 2 Burr. 1017 (English Reports, Full Print, Vol. 97, page 683) to the effect that whenever electors are present and do not vote at all, they virtually acquiesce in the election made by those who do. The common law of England is in force in Florida. See Section 87 C. G. L.

It is next contended that the alternative, writ is fatally defective because it fails to allege that the City of Jacksonville has money in the particular fund upon which the vouchers were drawn in favor of the relator, sufficient in amount to pay the vouchers now before the court and other

outstanding and unpaid vouchers payable to others out of this fund and cites Section 10 of Chapter 16493, Special Laws of Florida, Acts of 1933. We have given consideration to this contention. It is likewise pointed out that Ordinance No. Y-41, "Bill No. Y-81" requires the signatures of the President of the City Council, the City Recorder and the City Auditor. When considering the entire record we are not impressed with the contention that the great city of Jacksonville has not the money with which to pay its attorney, but the question raised by the President of the City Council is, Should he sign or countersign the vouchers payable to the relator as City Attorney. We think it to be his duty to sign or countersign the vouchers as directed by the ordinance, *supra*. The motion to quash the alternative writ is denied; the answer or return of the respondent to the alternative writ is legally insufficient and the motion for a peremptory writ, notwithstanding the return or answer, is hereby granted.

It is so ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.

## ON PETITION FOR REHEARING

PER CURIAM.—On petition for rehearing it is suggested that this Court overlooked and failed to consider Section 122 of the Charter of the City of Jacksonville as being the controlling statute and that the common law of England is not applicable. The thought or idea intended to be conveyed by statements in the original opinion was that there does not exist a statute, general in its application, in force in Florida that controls the point in issue.

The fact that no Florida statute of general application existed in Florida made it necessary for this Court to resort to the rules of common law as a guide in the construction

and interpretation of Section 122, *supra,* of the Charter of the City of Jacksonville.

Careful consideration has been given each ground appearing in the petition for rehearing. The same is hereby denied.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.