**J. E. PACE, as Auditor of the City of Jacksonville, and C. W. HENDLEY, Treasurer of the City of Jacksonville, v. STATE OF FLORIDA, ex rel. CHARLES F. SMEDLEY.**

7 So. (2nd) 595                                    Division B
March 27, 1942          Rehearing Denied En Banc April 21, 1942

Austin Miller and Eli Finkelstein, for plaintiffs in error.

Waybright & Waybright, for defendant in error.

THOMAS, J.:

Notwithstanding the answer a peremptory writ of mandamus issued commanding the auditor of the City of Jacksonville to approve and the treasurer to pay from the Playground and Recreation Fund a voucher to imburse relator for his salary for the period beginning 7 September 1940 and ending 7 January 1941. We proceed to analyses of such facts of the

alternative writ and answer as may be necessary to a determination of the points in controversy.

From admitted allegations of the writ it appears that the Playground and Recreation Board was established by Chapter 9788, Laws of Florida, Acts of 1923, for the purpose of acquiring and conducting places of recreation; that by Chapter 15262, Laws of Florida, Acts of 1931, the board was given control of all moneys donated or appropriated for its use, such funds to be paid upon voucher approved by the auditor; and that by Chapter 16866, Laws of Florida, Acts of 1935, the board was empowered, in the event of an emergency, to appoint an officer or employee in said Playground and Recreation Department "not to exceed sixty days duration, and immediately report said appointment to the Civil Service Board . . ." It was undisputed that one, J. E. Byrnes, had been "Executive head" of the department "under the direction" of the board for a long time prior to 7 September 1940, when he resigned, and that the board notified the Civil Service Board of the resignation when they learned it would be offered. The effect of respondents' answer is to admit that relator has performed the duties of the office allegedly held by him.

We will now give the substance of such of the allegations of the alternative writ of mandamus denied by respondents as seem vital to the disposition of the controversy: It was asserted that the relator was regularly employed by the board as business manager and that the post of "Executive head" was variously called "Executive Manager," "Director of Recreation and Business Manager." The writ contained the further averment that when the Civil

Service Board was notified by the recreation board of the impending resignation of Byrnes request was presented that the name of a qualified person be certified for his position. This was not done but a demand was made by the former that the latter recreate the post of "Superintendent of Recreation," which had been abolished, and that one Nathan Mallison be reinstated in that position. The significance of the request that Mallison be reinstated will become clearer from an examination of an opinion of this Court in the case of Arnold v. State ex rel. Mallison, Fla. 2 So. 2nd 874, and by reference to what we will say in this opinion in digesting the part of the answer of the respondents containing affirmative allegations. When the Civil Service Board failed to comply with the request that a successor to Byrnes be named the Playground and Recreation Board declared that an emergency existed because of the vacancy, and appointed relator to serve for sixty days and reported this action to the Civil Service Board. It was further alleged that before the expiration of the sixty day period, the Playground and Recreation Board again requested the Civil Service Board to send to it the name of a person qualified for the appointment and, for like reasons, the request was again refused, whereupon, the former board repeated the declaration that an emergency existed and reappointed the relator to succed himself for an additional period of sixty days. It was asserted that during the time for which the relator claims compensation he was "the duly and regularly appointed and acting Business Manager and executive head of said department." It was stated in the pleading that at all times there "has been and still is sufficient funds in the Playground

and Recreation Fund and budgeted and allocated to pay the salary of said position . . ." There was a specific denial that at the times of the appointments of relator any emergency existed.

We pause here, at the conclusion of the digest of the parts of the initial pleading denied by the respondents, to determine whether as a matter of procedure the trial judge should have required testimony to support the allegations of the writ, as insisted by the plaintiff in error, or was justified in issuing a peremptory writ on the motion for it. We have carefully examined the allegation of the answer denying the availability of funds properly appropriated and budgeted to pay the vouchers when presented and although we think it is subject to some criticism as being inartificially drawn, we cannot say that it fails to put that fact in issue. This position on our part has not been uninfluenced by the fact that the attempt is made to secure the payment of moneys from the public exchequer. If it should develop that money is not on hand for the purpose certainly the relator should not prevail.

"Mandamus to enforce payment of an order of warrant will generally be refused if it appears that there are no funds available with which to make the payment, and this for the obvious reason that courts, in administering the law, will not command an act to be done which is contrary to law." 34 Am. Jur., Section 174, pg. 949.

In State ex rel. Hansen v. Pomeroy, 100 Fla. 1510, 131 So. 384, it was held by this Court that the return of a clerk that there were insufficient moneys in a particular fund to redeem a warrant payable from that fund was a complete answer to the writ. This seems to be a recognition of the principle announced

in American Jurisprudence, supra. When the relator alleged that there were sufficient funds properly budgeted to pay the amount of his claim he must have been prepared to prove it and the denial on the part of the respondents put the question of fact in issue, placing the burden upon relator to substantiate the allegation.

We do not understand that this view is inconsistent with what was written in State ex rel. Miller v. Marshall, 135 Fla. 214, 184 So. 870, where the writ of mandamus commanded the president of the city council to sign a voucher, approved by the auditor which the president had refused to sign because of his view that the payee's appointment had not been properly confirmed.

In this connection it is well to draw attention to Chapter 16493, Laws of Florida, Acts of 1933, prohibiting expenditure of money in the City treasury except in accordance with prior appropriations for expenditures and placing the duty upon the city auditor to examine claims and countersign only vouchers against funds created by appropriation and not exhausted. In view of these positive statutory provisions and inhibitions and the affirmative and denial, to which we have referred, we conclude that proof should be taken of the availability of money for payment of any voucher which may issue if the relator is eventually successful.

It is our view that any such testimony would be important solely for the purpose of determining the existence of funds regularly budgeted and appropriated to pay for services such as the relator in this case performed regardless of whatever name might be used to denote the office held by him.

We pass now to a consideration of the affirmative matter set up in the answer of the respondents. As has been seen there was a denial that any emergency existed, justifying the appointment of the relator and this traverse is supplemented in the answer by positive averments of the absence of any situation warranting such a course and also challenging the validity of the designation because relator was given successive terms totaling more than sixty days. Respondents further charge in their answer that the appointment was void because made in violation of the provisions of the Civil Service Act, Chapter 16866, supra, thereby depriving other employees in the particular department of the opportunity of a promotional test to determine their right to advancement. It was affirmatively stated that the Playground and Recreation Board knew of the intended retirement of the incumbent on 28 May 1940, at which time he notified the board that he would serve until 1 September 1940, but that they made no request for a "promotional test" to determine who should succeed him.

This brings us again to the litigation instituted by Mallison which was culminated by our opinion in Arnold v. State ex rel. Mallison, supra. The day after Byrnes notified the recreation board he would have to discontinue his services because of ill health that board abolished the position then held by Mallison, which was evidently immediately inferior to the one filled by Byrnes. This would have had the effect, if not undone by the decision of this Court, of eliminating Mallison from any promotional test to succeed Byrnes. Patently, this is the reason the Civil Service Board ignored the request of the Playground and Recreation Board to certify a suitable person to suc-

ceed Byrnes and, instead of complying, demanded that the place held by Mallison be re-established. The principal purpose for giving this explanation is to make the opinion more understandable but it assists also in the determination of whether or not an emergency actually existed at the time the relator was appointed. We think it did because, obviously, there was a dispute between the Civil Service and the Playground and Recreation Boards, the former insisting that Mallison's office be re-established, in which event he would be eligible for a promotional test, and the latter insisting that the Civil Service Board certify the name of an appointee. Taking into account the pleadings in the case we think that the judge was justified in deciding that an emergency was shown by the pleadings without the necessity of testimony. This impasse was indeed an emergency.

We reach now the final phase with which we are to deal to dispose of the litigation and that is the propriety of the successive terms under the provisions of the Civil Service Act, Chapter 16866, supra. Under it, in Section 13, both provisional and emergency appointments could be made, the first "to prevent the stoppage of public business or inconvenience to the public, but not otherwise." A provisional appointment was restricted in all events to a period of sixty days and no person could receive more than one of them. In the same section an emergency tenure was confined to a period of sixty days but no limitation as to the number of such appointments was mentioned. Although the duration of such an appointment is the same as one made provisionally there is no provision whatever with reference to successive terms. It is argued to us that this gives a basis for the construc-

tion that because there is a limitation to one appointment where it is categorized as "provisional" there is no limitation on appointments that are made to meet emergencies. We consider such an interpretation unfounded and conclude that from the very nature of an emergency appointment there is no logical reason to hold that there may be an unlimited number of appointments of that character so long as each of them does not exceed sixty days. It is noteworthy that provisional appointments can be made only by authority of the Civil Service Board, while to make emergency appointments no authority from that board is needed.

In recapitulation, we point out that we have given first, the allegations of the writ which were admitted; second, those which were denied; and third, the affirmative averments of the answer. We have the view that testimony should be taken about the availability of moneys in the public treasury to pay a voucher to cover the services of relator and that in the event this allegation be established a peremptory writ should issue commanding the auditor to approve and the treasurer to pay a voucher covering the services rendered by the relator for a period of sixty days.

Affirmed in part; reversed in part, and remanded for proceedings consistent with this opinion.

BROWN, C. J., TERRELL, and CHAPMAN, JJ., concur.

### ON PETITION FOR REHEARING

THOMAS, J.:

In their petition for rehearing planitiffs in error insist that the judgment contained in the court's opinion was erroneous because it required that testi-

mony be taken on one of the issues formed by the return to the alternative writ and for the further reason that it contemplated, if that issue was established by evidence, that peremptory writ eventually issue for only part of the amount claimed. It is the position of the plaintiffs in error that the peremptory writ should issue for the whole amount or none of it and that upon a motion for peremptory writ notwithstanding the answer there should be either a peremptory writ for relator or the alternative writ should be discharged without taking of any testimony.

We have studied the history of the common law rule that upon motion for peremptory writ notwithstanding the answer judgment might be entered on the motion without further proceedings and we have also examined the decisions relative to the requirement that the peremptory writ should conform to the alternative writ. It is our view that in recent years there has been a trend away from the strict rule that a petitioner could not obtain a part only of the relief sought (35 Am. Jur., Mandamus, Sec. 383) and we are agreeable to adopting that view inasmuch as cases often arise,—the present one is a good illustration of such a situation—where it is entirely practicable and sensible to dispose of the litigation in one suit rather than discharge the writ and require the petitioner to institute another action to secure relief which could be easily granted without the additional expense and delay. Common Law Rule 87, paragraph (b) recognizes the propriety of such procedure: "When any such alternative writ is well founded a peremptory writ may issue without further amendments, to the extent such alternative writ is well founded." For the same reason it appears logical,

in the instant case, that the petitioner be given the opportunity of showing, before a final judgment is entered, that money is available in the public treasury to pay the warrant when approved. This view seems harmonious with Common Law Rule 86, providing that: "In the exercise of this discretion the court will have due regard for the rights of the parties, and will regulate the practice so as to secure as speedy a determination of the cause as is justified by the circumstances of each case." By following that procedure the inconvenience and cost of another suit would be precluded and the whole controversy decided on its merits in the present action.

We adopt this rule being, meanwhile, fully conscious of the opinion in the case of State ex rel. Burr v. Seaboard Air Line Railway Company, 92 Fla. 61, 109 So. 656, 273 U. S. 729, 71 L. Ed. 862, 47 S. Ct. 239, and the pronouncement therein and in any other opinions to the contrary is, therefore, overruled.

The petition for rehearing is denied.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD and CHAPMAN, JJ., concur.

ADAMS, J., not participating.